STATE of Missouri, Respondent,

v.

James Allen GUINN, Appellant.

No. WD 67569.

Missouri Court of Appeals,
Western District.

Jan. 15, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Rosalynn Koch, Columbia, MO, for Appellant.

Before: HOWARD, C.J., and SPINDEN and HOLLIGER, JJ.

VICTOR C. HOWARD, Chief Judge.

James Guinn appeals his conviction for possession of a controlled substance with intent to deliver. While executing a no-knock search warrant, police arrested Guinn at another person's residence where methamphetamine was found. The police found Guinn exiting a bedroom, which he had been in for no more than seven seconds. In that bedroom, a small amount of methamphetamine was located on palm-sized digital scale on a nightstand cluttered with other household effects. A separate quantity of methamphetamine was found in an innocuous closed container near where Guinn was arrested. Guinn now claims that the conviction was improper because the State failed to introduce evidence sufficient to demonstrate that he possessed the methamphetamine. We agree with Guinn and reverse the conviction.

## Facts and Background

After learning of an ongoing methamphetamine distribution operation at Dale Barker's house, police obtained a no-knock search warrant. At approximately 9:00 p.m., police arrived at the house and surveilled the premises for between six and ten minutes. Before executing the warrant, the police did not see anyone enter or exit the house. However, while waiting to search the house, one of the officers saw Guinn and Barker through the front door. Guinn and Barker then moved toward the back of the house; Barker went to the living room and Guinn toward the master bedroom. Immediately after a police officer saw Barker and Guinn move toward the back of the house, they set off a diversionary device outside the house and entered the residence. The police secured Barker in the living room and Guinn in the doorway between the master bedroom and the living room, as he was walking into the living room. Guinn was out of the officer's sight for approximately seven seconds.

Methamphetamine was found in the house in three different locations. On a table near the front door, the police found a saltshaker in a tin container. The saltshaker contained between four and six grams of methamphetamine. On the floor next to the doorway between the master bedroom and the living room, police found a closed Rubbermaid container, which contained twenty to thirty grams of methamphetamine. On an ordinary nightstand in the master bedroom, which was adjacent to the doorway to the living room, the police located a palm-sized digital scale on which a clear plastic cup was located. In that plastic cup, police found roughly 3/4 of

a gram of methamphetamine, the street value of which was between $50 and $100. Also on the nightstand, the police found plastic bags among many other household items. In addition to the methamphetamine, police discovered at the house $4,029 in cash, five rifles, two pistols, two shotguns, and a pair of night vision goggles.[1] During trial, the State asked a police officer, "[W]hen a distribution operation is going on, do they allow strangers who are unaware of the drugs in the house, do they allow them just to unfettered walk around the residence?" and the officer responded, "It's not been my knowledge to see it that way, no. They're usually pretty protective of the area where they're doing their drug transactions."

Guinn did not testify at trial but called two witnesses. One of the witnesses testified that Guinn did construction work for him but he did not employ Guinn full time. Barker testified that Guinn had come to his home to discuss tearing down a building for him. According to Barker, immediately prior to the police's entry into the home, Guinn went to use the bathroom off the master bedroom. Laundry and other household items obstructed the path to the other bathroom in the home. Barker noted that he "kept an eye on" Guinn as he moved through the bedroom. He also thought that his girlfriend had stored the scale and methamphetamine on the nightstand in a more secure location.

The State charged Guinn with possession of a controlled substance with intent to deliver under section 195.211.[2] After the State made its case, Guinn moved for judgment of acquittal arguing that the State failed to introduce sufficient evi-

---

1.  The weapons and night vision goggles were located in an open closet in the master bedroom. Despite the State's assertions, the record is unclear whether the weapons and goggles were in plain view.

2.  All citation to statutes refers to RSMo 2000 and all citation to rules refers to Missouri Supreme Court Rules (2007) unless otherwise noted.

dence. The court denied the motion. A jury convicted Guinn of possession with intent to deliver. He now appeals.

## Standard of Review

When a criminal defendant challenges the sufficiency of the evidence to support his conviction, our review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Chavez,* 128 S.W.3d 569, 573 (Mo. App. W.D.2004). "In making that determination, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and disregard all evidence and inferences to the contrary." *Id.* However, we "may not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences." *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001) (internal citation omitted).

## Analysis

Guinn claims that the State's evidence was deficient so that no reasonable trier of fact could have concluded that he constructively possessed the methamphetamine. We agree.

Guinn was convicted of possession of a controlled substance with intent to deliver. "[I]t is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce [methamphetamine]." § 195.211.1.

To sustain a conviction for possession of a controlled substance with intent to deliver, the State must prove that appellant had (1) conscious and intentional possession of the substance, either actu-

al or constructive, (2) awareness of the presence and nature of the substance, and (3) the intent to deliver the substance.

*State v. Sutherland,* 11 S.W.3d 628, 631 (Mo.App. E.D.1999). Possession, as defined by statute, means:

with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint.

§ 195.010(34). "'Actual possession of a substance is where the person has the substance on his person or within his easy reach and convenient control.'" *Chavez,* 128 S.W.3d at 574 (quoting *State v. Rollett,* 80 S.W.3d 514, 521 (Mo.App. W.D.2002)).

Constructive possession, insofar as it relates to possession of a controlled substance, is a modern and relatively amorphous legal concept. *See State v. Schleicher,* 438 S.W.2d 258 (Mo.1969); *State v. Watson,* 350 S.W.2d 763, 766 (Mo. 1961) (stating, "In *State v. Drew,* 179 Mo. 315, 78 S.W. 594, 595, it was held that the possession [of stolen goods] must be exclusive and that a constructive possession, though sufficient to create a civil liability, is not sufficient to hold a party responsible criminally since he can only be required to account for things which he actually and knowingly possessed."). *See also* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not,* 58 Va. L.Rev. 751 (1972). "To convict for constructive pos-

session of an unlawful substance, the knowledge of the presence of the drug and dominion over the substance requisite for conviction for actual possession in fact must be proved by evidence of equivalent effect." *State v. Lowe,* 574 S.W.2d 515, 522 (Mo.App.1978).

Absent proof of actual possession, constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance. Thus, proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found. Defendant's *exclusive* control of the premises is enough to raise an inference of possession and control of the substance. *Joint* control of the premises, however, requires some further evidence or admission connecting the accused with the illegal drugs. It follows that merely being a guest in the premises of another where drugs are found is not sufficient to sustain a conviction for possession of controlled substances. The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control.

*State v. Purlee,* 839 S.W.2d 584, 588 (Mo. banc 1992) (internal citation omitted). "Where the defendant shares possession of the premises with others ... additional evidence of some incriminating circumstances must also be presented to permit the inference of knowledge and control over the substance." *State v. Hendrix,* 81 S.W.3d 79, 83 (Mo.App. W.D.2002). "[A] defendant's presence in a residence as guest or occasional visitor is sufficient to show constructive possession if additional factors are present indicating that he had control over the drugs." *State v. Foulks,* 72 S.W.3d 322, 326 (Mo.App. S.D.2002). "The totality of the circumstances is con-

sidered in determining whether sufficient additional incriminating circumstances have been proven." *Id.* at 325.

Courts employ a wide variety of incriminating factors to satisfy judicial scrutiny and support a finding of constructive possession. They can include: "routine access to an area where such substances are kept, the presence of large quantities of the substance at the scene where appellant is arrested, admissions of the accused, ... being in close proximity to drugs or drug paraphenalia [sic] in plain view of the police; [and the] mixture of defendant's personal belongings with the drugs." *State v. Morris,* 41 S.W.3d 494, 497 (Mo.App. E.D. 2000) (internal citations omitted). A strong smell of ether, a methamphetamine precursor chemical, and "'consciousness of guilt,' which can be shown by 'attempts to deceive the police, as in making a false exculpatory statement'" or nervousness have also been considered factors which demonstrates constructive possession. *State v. Booth,* 11 S.W.3d 887, 892 (Mo. App. S.D.2000); *State v. Farris,* 125 S.W.3d 382, 388 (Mo.App. W.D.2004) (internal citation omitted).

The State argues that "at a minimum," a jury could have inferred that Guinn had constructive possession of the methamphetamine seized in the master bedroom and that its presence on a scale indicates that he intended to deliver the drugs. Building on the limited evidence of possession, the State asks the court to permit several inferences drawn from the evidence. The State asks us to permit the inference that because Guinn was walking out of the otherwise unoccupied master bedroom where methamphetamine was found on a scale, that Guinn was the person who had been measuring the methamphetamine. Finally, the State asks us to permit the conclusion that because Guinn was free to move to portions of the house

where illegal drugs, paraphernalia, and weapons were located without escort, that he must have been part of the drug-dealing operation. To permit these inferences, however, would extend precedent to an unacceptable position by speculating that the mere possibility that Guinn saw the methamphetamine on the scale and was the closest person to it when he was arrested, created a reasonable inference that he possessed it. The State cites very few facts to enable us to push beyond mere speculation and to give rise to a reasonable inference of possession.

██ While the 3/4 gram piece of methamphetamine on the scale may have been in plain view for purposes of a probable cause to arrest determination, *see State v. Johnston*, 957 S.W.2d 734, 742–43 (Mo. banc 1997), even when viewed in a light most favorable to the trial court's ruling, the plain view evidence is insufficient to convict Guinn. The drugs were not easily observable or readily recognizable as contraband because they were located in the disarray and clutter of the nightstand.

Several Missouri cases have used the fact that the contraband was easily observed on property jointly controlled or occupied by defendant as a significant factor in concluding a defendant has constructive possession over the contraband. In *State v. Jackson*, the defendant shared an apartment with his girlfriend. 576 S.W.2d 756, 756 (Mo.App. E.D.1979). Police arrested the defendant

> two feet from a kitchen table upon which in plain view there were several syringes, ten measuring spoons, several empty capsules, and eighteen capsules containing a brown powder later identified by chemical analysis to be heroin. [Defendant] had actual access to the area where the heroin was found, and most of the items on the table were *readily recognizable as drug related.*

*Id.* at 757 (emphasis added). The court found the evidence sufficient to sustain a conviction. *Id.*

In *State v. Kerfoot*, the contraband was not necessarily in "plain view" but "easily observed." 675 S.W.2d 658, 662 (Mo.App. E.D.1984).

> [T]he same cannot be said for the remainder of the marijuana. All of the marijuana was found in places on the farm to which defendant, during the course of farming, would have had easy access. The growing marijuana plants were very tall, bushy and *easily observed.* They had obviously been growing for sometime and were only a short distance from the corn field which defendant had personally planted. The three closest outbuildings to the trailer—a grain bin, hog shed and tool shed—all had drying marijuana plants in them. The plants in the open hog shed were draped from the rafters and were *easily observed.*

*Id.* (emphasis added). In *Kerfoot*, the defendant was deemed to have constructive possession of the marijuana plants because obvious evidence of drug production was "easily observed" on land that he had control over and that was easily accessible. *Id.* The court concluded that even though others had access to the area, the jury was free to conclude that the defendant constructively possessed the marijuana plants. *Id.*

In *State v. Harris*, the defendant was arrested in the passenger seat of a car where "a box containing a cocaine solution with a syringe balanced neatly on its rim rested at the feet of defendant Harris as he sat in a truck." 807 S.W.2d 528, 530 (Mo.App. W.D.1991). As additional evidence, the State produced evidence demonstrating that the defendant and the other occupant of the car

had with them a "how to" book on drug use. When caught in the rangers' search lights, they quickly bent forward, almost disappearing. A reasonable person could conclude from that evidence that the defendant sought a secluded and dark place where he could inject cocaine, that he participated in preparing for the injections after they had parked, and that, when discovered, he tried to hide the syringe and container. In particular, we note that action resembling an effort to conceal, like flight from a crime scene, constitutes admissible evidence reasonably implying consciousness of guilt.

*Id.* The Court concluded that the Defendant's

assertion that he had not seen the container and syringe until after the rangers' search required belief that a syringe could remain balanced on the rim of a plastic container during a winding drive and that during the drive, no liquid would splash out of the uncovered container. It also demanded belief that he could sit throughout the evening, as well as bend down within a few inches of them, and never notice the objects at his feet. Accepting his reasoning would have compelled the jurors to conclude either that he kept his eyes closed all night or that a miracle of spontaneous generation occurred when the rangers searched the truck.

*Id.* The jury was free to conclude that the defendant had constructive possession of the contraband.

The facts of the current case are far different from the precedent citing "plain view" as an additional significant factor in finding constructive possession. In each of the plain view cases, the drugs or drug paraphernalia were "easily observable" or "readily recognizable" as contraband and the defendant was either seated near the drugs, near the drugs for a significant time, or possessed and farmed the land were drugs were grown and harvested. Two factors in the current case lead us to believe that the drugs on the nightstand were not "easily observable" or "readily recognizable" as contemplated by this line of cases. First, Guinn was in the bedroom for no more than seven seconds. This uncontested piece of evidence significantly distinguishes the case from the precedent listed above. Second, the scale was small and the drugs at the bottom of the cup would not have been easily observed amongst the clutter of the nightstand. No evidence was admitted that Guinn was in close enough proximity so that the contraband would be easily observable. Evidence admitted at trial and submitted as part of the record on appeal, shows an ordinary nightstand covered with a table lamp with a decorative lampshade, a cell phone attached to the lampshade, a telephone duct taped to the lamp, two telephone books, an ashtray, a clock radio, a pen, two boxes of envelopes, a flashlight, a spiral notebook, a box of tissues, and other miscellaneous items.[3] The palm sized scale, the cup on it, and 3/4 of a gram of methamphetamine in the cup may have been in "plain view" for purposes of a probable cause determination; however, they would not have caught the attention of an ordinary observer unless they were looking for contraband, already knew of its existence, or had reason to closely examine the items covering the nightstand. The contraband would not have been readily apparent nor easily observable to an ordinary person present in the bedroom for mere seconds prior to the arrest.

---

**3.** Barker also testified that the scale and methamphetamine were placed behind the lamp and moved in front of the lamp when the picture in evidence was taken.

The State likens the current scenario to that of *State v. Greer*, 918 S.W.2d 327 (Mo.App. E.D.1996). In that case, police executed a search warrant at an apartment. *Id.* at 329. Upon entering, the police proceeded down a hallway and heard running water in a bathroom. *Id.* Police entered the bathroom and found the defendant alone, near a sink with the water running. *Id.* The police did not see the defendant place anything in the sink; however, a police officer testified that it was common for individuals to destroy contraband in sinks. *Id.* When the authorities disassembled the pipes under the sink, they found two pieces of crack cocaine. *Id.* The court ruled that the evidence was sufficient to convict the defendant of possession of the cocaine in the pipes under a theory of constructive possession. *Id.* at 329–30. The court reasoned that the State promoted a reasonable inference in arguing that the defendant recently placed the cocaine in the sink because it had not yet dissolved. *Id.*

The State also cites *State v. Johnson*, for a similar proposition. 705 S.W.2d 483 (Mo. banc 1986). In *Johnson*, the police executed a search warrant in an apartment where the defendant was neither the owner nor occupier of the apartment and others were present at the apartment. *Id.* at 484. Police found the defendant alone in a bathroom in the process of flushing the toilet. *Id.* at 483. In the toilet, police found several foil packets of heroin. *Id.* Police found additional heroin in other parts of the home. *Id.* at 484. The Missouri Supreme Court concluded that the evidence was sufficient to demonstrate possession. *Id.* The Court noted that no one else was in the bathroom when the defendant was arrested and the jury could have concluded that the defendant was attempting to destroy the heroin when he heard the police enter the apartment. *Id.*

Unlike *Greer* and *Johnson*, however, in the current case, a jury could not reasonably draw an inference that the owner of the contraband recently deposited the methamphetamine where it was found and that, therefore, the person closest to the drugs was the owner. It is a reasonable inference that those who possess drugs generally do not keep their drugs in the toilet or at the bottom of the sink, and, if found there, those drugs were recently placed there in an attempt to destroy those drugs. A reasonable extension from this inference is that a person found near illegal drugs located in either a sink or toilet is in the process of destroying those drugs. However, unlike the drugs found in pipes below a sink or in a toilet, drugs found on a scale are more likely to have been left there for a significant time. It was not a reasonable inference that Guinn entered the bedroom and began to weigh the methamphetamine.

The State points to additional evidence that Guinn constructively possessed the methamphetamine, none of which creates a reasonable inference of guilt. There was no evidence that Guinn was permitted to "wander about" the house unescorted. Guinn was in the bedroom for a matter of seconds, and the record does not demonstrate that he was out of view of Barker for any significant time.[4] Additionally, the State attempts to rely on the fact that Guinn was arrested as he walked from the bedroom to the living room. Near the doorway between the two rooms, the police seized a closed container containing thirty

---

4. Moreover, even if Guinn left Barker's view, the small amount of drugs in the bedroom may still have been within Barker's view. Due to the arrangement of the nightstand next to the doorway between the bedroom and the living room, Barker, while remaining in the living room, may not have lost sight of the nightstand.

grams of methamphetamine. However, his proximity to the container was due the fact that he was ordered to freeze there, not because Barker permitted him to linger at that spot. Moreover, the box was closed and at all times under Barker's watch. As a final piece of evidence, the State points to several firearms found in the closet of the master bedroom. They use this evidence to bolster their argument that Barker permitted Guinn to move freely about the house and, therefore, Guinn must have been part of the drug dealing operation and to indicate that an ordinary person would have concluded that illegal activity was underfoot because multiple weapons were located in an open closet in the bedroom. The State presents no evidence that the weapons were illegal or unusual or even easily observable. It is unclear as to why the State relies on this evidence as support for constructive possession of the methamphetamine.

While our task is not to reweigh conflicting evidence, it is to excise unreasonable inferences and ensure that the State has met its burden in presenting a submissible case. Guilt by association has long been an impermissible rule in Missouri. *See State v. Clark,* 646 S.W.2d 409, 411 (Mo. App. W.D.1983). Missouri courts have stated on multiple occasions and in varied contexts, that a defendant's close proximity to illegal substances upon arrest does not constitute constructive possession. *Farris,* 125 S.W.3d at 392; *Purlee,* 839 S.W.2d at 588 (stating, "being a guest in the premises of another where drugs are found is not sufficient to sustain a conviction for possession of controlled substances"). Here, the State attempts to demonstrate constructive possession through the defendant's close proximity to the drugs and little more. The law cannot, and does not, require that each visitor to a residence account for each item in that residence.

### Conclusion

We, therefore, reverse the conviction.

SPINDEN and HOLLIGER, JJ., concur.