# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3023
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Fisher

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: April 15, 2020
Filed: July 8, 2020
[Published]

_____

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.

_____

PER CURIAM.

Jeremy Fisher pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The district court[1] sentenced Fisher to 98 months' imprisonment. Fisher appeals, arguing that the district court erred in imposing sentencing enhancements based on Fisher having possessed (1) at least three firearms and (2) a firearm in connection with another felony offense. We affirm.

## I. *Background*

On January 24, 2018, officers executed a narcotics search warrant at John Benedetti's residence. When the officers entered the residence, they heard someone yell "it's the f\*\*king cops" and then heard a gunshot in the bedroom. Presentence Investigation Report (PSR) at ¶ 4, *United States v. Fisher*, No. 6:18-cr-03055-MDH-2 (W.D. Mo. June 19, 2019), ECF No. 67. The officers entered the bedroom, and Benedetti, Fisher, and a woman exited the master bathroom located in the bedroom with their hands up. After his arrest, Fisher waived his *Miranda* rights and explained to the officers that he thought the residence was being robbed when the officers entered the residence. He heard noises through a window and then retreated into the master bathroom for his safety. He explained that he heard Benedetti yell "shoot 'em, shoot 'em, shoot 'em," and he attempted to discharge a firearm; it lacked ammunition. *Id.* at ¶ 8.

During the eventual search of the residence, the officers recovered several firearms along with ammunition. Specifically, the officers found two loaded handguns in the master bathroom. In the master bedroom, the officers found two handguns under the TV, one of which contained 29 rounds of ammunition. They also found one spent shell casing on the floor. In addition, they discovered a magazine with 16 rounds of ammunition in the bedroom closet and an opened box of ammunition on a dresser in the bedroom. On the floor in an unidentified part of the

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

house, they also located a handgun with 15 rounds of ammunition. Finally, the officers found about 17 grams of methamphetamine, 13 grams of marijuana, digital scales, baggies, and drug paraphernalia in the bedroom.

Fisher pleaded guilty to being a felon in possession of a firearm. In his plea, he admitted that he picked up a firearm after hearing strange noises outside of a window. Further, he admitted that there were two loaded handguns in the bathroom. Fisher's PSR recommended a base offense level of 20 because the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(4)(B). In addition, the PSR applied a two-level enhancement because the offense involved three to seven firearms. Fisher objected to the base offense level and the enhancement, arguing that he did not possess the two loaded handguns in the bedroom. The government also objected, arguing that the PSR failed to apply a four-level enhancement under § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony.

At the sentencing hearing, the district court first considered the firearm enhancements. Fisher argued that he did not possess the firearms in the bedroom because he was in the bathroom. The government rebutted by explaining that Fisher and Benedetti shot from the bedroom, which was confirmed by the casing found on the bedroom floor. The district court noted that the bathroom could only be accessed through the bedroom.

The government also argued that Fisher should receive a four-level enhancement because he possessed a firearm in connection with another felony: either attempted assault of the officers or a drug possession or trafficking offense. The government explained that drug possession would be enough because it is a felony in Missouri. Fisher stipulated that one bag of methamphetamine was located on top of a dresser in the bedroom. Further, the government argued that Fisher admitted to pulling the trigger on his firearm, and Benedetti's shot traveled through the bedroom

and lodged in the floor of the hallway. Later, an officer reported a hole in his pants that was consistent with a gunshot passing through the pants leg. But, Fisher justified possession of the firearm by stating that he thought the house was being robbed and did not know the officers were in the house when he grabbed the firearm to shoot.

The district court overruled Fisher's objection to the firearm enhancements "based on [the] location of the weapons and . . . since one of the weapons was capable of accepting a large capacity." Sent. Tr. at 17, *United States v. Fisher*, No. 6:18-cr-03055-MDH-2 (W.D. Mo. Sept. 11, 2019), ECF No. 92. In addition, the district court agreed with the government that Fisher should receive a four-level enhancement "based on several potential crimes that the defendant was engaged in, including using a—having a weapon in protection of a drug stash, including firing an—assault on an officer." *Id.* at 17–18.

Based on the sentencing enhancements, the district court calculated a total offense level of 23 and a criminal history category VI, resulting in a Guidelines range of 92 to 115 months' imprisonment. The district court emphasized the seriousness of Fisher's criminal history, which it described as "unacceptable." *Id.* at 25. The court stated its view that Fisher's criminal history "demonstrates a person who thinks they don't have to follow the rules." *Id.* at 25–26. Based on these considerations, the district court sentenced Fisher to 98 months' imprisonment. The district also indicated that it would have imposed the same sentence "regardless of [its] rulings on the guidelines" because Fisher's "criminal history crie[d] out for a significant sentence for a life-altering event." *Id.* at 32.

## II. *Discussion*

Fisher argues on appeal that the district court erred in applying the sentencing enhancements because (1) he did not possess the two firearms in the bedroom and (2) he did not commit another felony in connection with his firearm offense. "We review

the district court's application of the Guidelines de novo and its factual findings for clear error." *United States v. Swanson*, 610 F.3d 1005, 1007 (8th Cir. 2010).

A. *Multiple Firearms Enhancement*

Fisher first challenges the enhancements for possessing three to seven firearms and possessing a firearm capable of accepting a large capacity magazine. He argues that he did not possess the two firearms in the bedroom because there was no evidence that he "resided or exercised dominion over the residence in question and facts supported that the residence in fact was owned and possessed by co-defendant Benedetti." Appellant's Br. at 10.

In an illegal firearms case, "[t]he government can prove knowing possession by showing actual or constructive possession, and possession can be sole or joint." *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014). "Constructive possession is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *Id.* (internal quotations omitted). "Mere physical proximity to a firearm" is insufficient to prove constructive possession. *Id.* (internal quotation omitted). However, "knowledge of a firearm's presence, combined with control is constructive possession." *Id.* (cleaned up). The district court "may infer defendant had control of the firearm based on all the circumstances." *United States v. Byas*, 581 F.3d 723, 726 (8th Cir. 2009).

Fisher is correct that the record evidence does not establish that he had control over the premises. He did not live at Benedetti's residence. Constructive possession can be established by other evidence, however. Specifically, the government may show control over the firearms based on the totality of the circumstances. *See id.* In *United States v. Perez*, we affirmed a district court's determination that a defendant constructively possessed a gun when he (1) was arrested 50 yards from the firearm after he ran from officers and (2) admitted the firearm was present at a marijuana operation even though he did not own or control the premises. 663 F.3d 387, 391–92

(8th Cir. 2011). Here, even though Fisher did not own or live at Benedetti's residence, it is uncontroverted that he exercised control over the firearm he attempted to shoot at the officers.

Fisher admits that he had possessed the firearms in the bathroom but argues that the two handguns in the bedroom were not in plain sight. As a result, he contends it is not reasonable to conclude that he possessed the handguns in the bedroom. However, in *Byas*, we held that it was not clearly erroneous for a district court to find a sufficient nexus between a passenger defendant and a firearm in a trunk, which was out of plain sight, because he knowingly rode in the vehicle with a knife and another gun in the front of the vehicle. 581 F.3d at 726. And, based on these facts, the district court could "draw the reasonable inference that defendant and his companions knew the loaded rifle was in the trunk." *Id.*

Similarly, here, Fisher does not dispute that he knew about the two firearms in the bathroom, and he admits that he attempted to shoot into the bedroom with his firearm. Moreover, Benedetti, standing next to Fisher, actually fired at the officers, and his shot went through the bedroom. Finally, it is undisputed that officers observed ammunition on the bedroom dresser in plain view. Therefore, based on the totality of the circumstances, "the district court's inference of a sufficient nexus between [Fisher] and the firearm[s] was not clearly erroneous." *Id.* We agree that "sufficient circumstantial evidence supported a finding of constructive or joint possession, if not actual possession." *United States v. Vega*, 720 F.3d 1002, 1004 (8th Cir. 2013) (quoting *United States v. Koskela*, 86 F.3d 122, 127 (8th Cir. 1996)).

B. *Possession in Connection with Another Felony Offense Enhancement*

Fisher next argues that the district court erred in imposing a four-level enhancement for possession of a firearm in connection with a felony offense. He contends "that there simply is not a sufficient nexus between . . . Fisher and all of the

items located in . . . Benedetti's bedroom" to hold him "responsible for committing another felony at the time of the instant offense." Appellant's Br. at 15.

The four-level enhancement applies if Fisher "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." *United States v. Holm*, 745 F.3d 938, 940 (8th Cir. 2014) (quoting *United States v. Littrell*, 557 F.3d 616, 617 (8th Cir. 2009)).

Under Missouri law, possession of methamphetamine is a felony. *See* Mo. Rev. Stat. § 579.015. To establish possession, there must be "(1) a conscious and intentional possession of a controlled substance, either actual or constructive, and (2) an awareness of the presence and nature of the substance." *State v. Bacon*, 156 S.W.3d 372, 377 (Mo. Ct. App. 2005) (internal quotations omitted). Because the illegal substance was not in Fisher's reach for him to actually possess it, here, we consider constructive possession. *See id.* "Constructive possession requires a showing that the accused had the power and intention to exercise dominion or control over the substance either directly or through another person." *State v. Moses*, 265 S.W.3d 863, 865 (Mo. Ct. App. 2008).

"A defendant's presence in a residence as guest or occasional visitor is sufficient to show constructive possession if additional factors are present indicating that he had control over the drugs." *State v. Guinn*, 242 S.W.3d 479, 483 (Mo. Ct. App. 2008) (cleaned up). These additional factors include evidence such as routine access to where the controlled substance is located, the presence of large quantities, and "the accused being in close proximity to the controlled substance in plain view of law enforcement officers." *State v. Stephens*, 482 S.W.3d 499, 502 (Mo. Ct. App.

2016) (internal quotation omitted). In *State v. Keeper*, even though the defendant did not reside in the house, there was sufficient evidence that he possessed a controlled substance in the house because he often visited the home and was standing close to a "readily recognizable" bottle of PCP when officers arrived at the scene. 787 S.W.2d 887, 890 (Mo. Ct. App. 1990).

Fisher had access to Benedetti's residence, and it is undisputed that Benedetti gave Fisher control over some firearms in the residence when Benedetti let Fisher use a firearm to protect the residence. Further, Fisher admitted that he attempted to protect the residence by discharging a firearm when he "thought that they were being robbed." Tr. of Change of Plea Hr'g at 12, *United States v. Fisher*, No. 6:18-cr-03055-MDH-2 (W.D. Mo. Feb. 27, 2019), ECF No. 64. Most incriminating, Fisher did not dispute that a bag of methamphetamine was on the dresser in the bedroom into which the two fired their weapons at the officers, and, therefore, he was "in close proximity to the controlled substance in plain view of law enforcement officers." *Stephens*, 482 S.W.3d at 502 (internal quotation omitted). Given this evidence, the district court did not clearly err in concluding that a preponderance of the evidence supported the determination that Fisher possessed the methamphetamine located in the bedroom. *See State v. Jackson*, 576 S.W.2d 756, 757 (Mo. Ct. App. 1979) (finding that the defendant constructively possessed a controlled substance because the defendant was within a couple of feet of the location of the controlled substance and the defendant had actual access to the area).

When the other felony offense is drug possession, "the enhancement is appropriate only if the [firearm] facilitated, or had the potential of facilitating, . . . drug possession." *United States v. Walker*, 900 F.3d 995, 997 (8th Cir. 2018) (per curiam) (internal quotation omitted). However, "we have never reversed a § 2K2.1(b)(6)(B) enhancement merely because a specific 'facilitate' finding was not made." *United States v. Sneed*, 742 F.3d 341, 344 (8th Cir. 2014). We will affirm if "the record makes clear the district court understood and properly applied the

'facilitate' standard of note 14(A) in finding that [Fisher] possessed the firearm 'in connection with' his felony drug offense." *Id.* Here, although the district court did not explicitly make a facilitate finding, the record makes clear that the district court understood that Fisher's firearm had to facilitate his methamphetamine possession for the enhancement to apply. The court actually mentioned how the firearm served to protect the drug stash.

"We have previously held that a 'temporal and spacial nexus between the drugs and firearms,' standing alone, is insufficient to establish that the firearms facilitated the felony offense of simple drug possession." *Walker*, 900 F.3d at 997 (quoting *Sneed*, 742 F.3d at 344). "To facilitate the crime of drug possession, the defendant must possess the gun with the purpose or effect of facilitating the drug possession . . . ." *United States v. Swanson*, 610 F.3d 1005, 1008 (8th Cir. 2010). We have held that the enhancement may apply even when the defendant argues that the gun was for self-protection because the gun can also be used to protect drugs. *See United States v. Fuentes Torres*, 529 F.3d 825, 826–28 (8th Cir. 2008). "The inference that a firearm is for protection of drugs is allowable when the amount of drugs is more than residue." *Swanson*, 610 F.3d at 1008.

Here, there is much more than a spacial nexus. Fisher and Benedetti were actually shooting at the officers while near the drugs, believing they were being robbed. In addition, it is undisputed that there was a bag of methamphetamine on a dresser in the bedroom where Fisher and Benedetti fired their weapons. And, officers discovered 17 grams of methamphetamine, which qualifies as substantially more than mere residue. Finally, even if Fisher believed he was firing the gun in order to protect himself from home intruders, the district court could still draw the reasonable inference that he was using his firearm "in protection of a drug stash." Sent. Tr. at 18.

On these undisputed facts, the district court did not err in determining that Fisher's use of a firearm was connected with his felony drug offense.[2]

Finally, even if the district court did err in imposing the above enhancements, the error was harmless. "An incorrect Guidelines calculation is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence, such as when the district court indicates it would have alternatively imposed the same sentence even if a lower guideline range applied." *United States v. Dace*, 842 F.3d 1067, 1069 (8th Cir. 2016) (per curiam) (internal quotations omitted). For example, "when a district court's detailed explanation for the sentence imposed makes 'clear that the judge based the sentence he or she selected on factors independent of the Guidelines,' the error may be harmless." *Id.* (quoting *United States v. Molina-Martinez*, 136 S. Ct. 1338, 1346–47 (2016)).

Here, the district court expressly stated that it would have "adopt[ed] that sentence regardless of [its] rulings on the guidelines" because Fisher's "criminal history crie[d] out for a significant sentence for a life-altering event." Sent. Tr. at 32. In addition, the district court engaged in a thorough discussion of the 18 U.S.C. § 3553(a) factors. The district court discussed the severity of Fisher's decision to attempt to shoot the firearm and his extensive 25-point criminal history, which far exceeds the threshold required to enter the highest criminal category of VI. Further, the district court discussed Fisher's history of resisting the police and his potential danger to the public. The district court's thorough discussion of its reasoning for imposing Fisher's sentence shows that any procedural error was harmless.

---

[2]Because we conclude that Fisher's drug possession qualifies as another felony offense, we do not need to consider the district court's alternative basis for applying the enhancement—that he assaulted the officers in violation of Missouri law. *See Holm*, 745 F.3d at 943.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____