**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Shelly TOWNSEND, Defendant-Appellant.**

**No. 72–2100**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1973.

John J. C. O'Shea, Lubbock, Tex. (Court appointed), for defendant-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Asst. U. S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Shelly Townsend, the leader of Cleo's Funky Express, a rock and roll band operating on and around Reese Air Force Base, Texas, was convicted of receiving and concealing, within the special territorial jurisdiction of the United States,[1] amplifying equipment stolen from another band, the Neal Ford Foundation. He was acquitted of the disjunctive charge of theft of the same property.[2]

---

1. 18 U.S.C.A. § 662.
"Receiving stolen property within special maritime and territorial jurisdiction

Whoever, within the special maritime and territorial jurisdiction of the United States, buys, receives, or conceals any money, goods, bank notes, or other thing which may be the subject of larceny, which has been feloniously taken, stolen, or embezzled, from any other person, knowing the same to have been so taken, stolen, or embezzled, shall be fined not more than $1,000 or imprisoned not more than three years, or both; but if the amount or value of thing so taken, stolen or embezzled does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

2. 18 U.S.C.A. § 661.
"Within special maritime and territorial jurisdiction

Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:

If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or imprisonment for not more than five years, or both; in all other cases, by a fine of not more than

The case finally turns on whether possession of the property *off* the military base can give rise to the inference that the property was received or concealed *on* the base.[3] We answer in the negative and reverse for a new trial.

There is clearly sufficient proof that Appellant received the property and converted it to his own use. Likewise, the evidence that Appellant had knowledge that the property was stolen is convincing.[4] In fact, if Appellant had been convicted of theft of the property in question we would affirm that conviction.

■ If the theft charge had resulted in a conviction, by affirming it, we would of necessity hold that under our cases,[5] there was sufficient evidence that Appellant removed, or aided in the removal of, the purloined items from Reese Air Force Base.[6] However, we are compelled to the seemingly anomalous conclusion that there was no evidence that Appellant received and concealed the stolen property within the special territorial jurisdiction—the confines of Reese Air Force Base—of the United States. The facts which prompt this determination are as follows.

The evening of September 3, 1971, found appellant Townsend and friends driving around and drinking on a presumably innocent week-end jaunt. Their erratic course took them to Reese Air Force Base in Lubbock County, Texas, where Neal Ford and his band, the Neal Ford Foundation, was entertaining at the Officers' Club. At 1:00 a. m. the Neal Ford Foundation left the bandstand for the evening and left behind most of their equipment.

Shortly after 1:00 a. m. Sergeant Lloyd Edwards, the night manager of the Officers' Club, proceeded to make his usual fire check which would be followed by locking up the club. In the ballroom, where the Neal Ford Foundation had been playing, he discovered Appellant sitting alone at a table. He queried Appellant as to what he was doing there to which Appellant replied that he was waiting to see the bartender, Cliff Colley. Appellant did not talk to Colley that evening although the latter was working in the main bar until sometime after 1:00 a. m.

Sergeant Edwards informed Appellant that he would have to leave, a direction with which Appellant complied. Sergeant Edwards saw Appellant leave with no object or anything else in his possession. Thereafter he locked all of the doors to the club at 1:45 a. m. at which

---

$1,000 or by imprisonment not more than one year, or both.

If the property stolen consists of any evidence of debt, or other written instrument, the amount of money due thereon, or secured to be paid thereby and remaining unsatisfied, or which in any contingency might be collected thereon, or the value of the property the title to which is shown thereby, or the sum which might be recovered in the absence thereof, shall be the value of the property stolen."

3. Appellant assails the judgment and commitment on a number of fronts. These include challenges to the indictment, the actions of the trial Judge in cautioning counsel on the need for candor by Appellant in making a pauper's oath, and the sufficiency of the evidence on all points. Appellant's charge that the indictment is insufficient in its allegations is without merit. The allegedly prejudicial remarks by the trial Judge are unlikely to recur on retrial. The other claims of error are meritless.

4. The other minor but indispensable elements of the crime—such as the value of the stolen property exceeding $100.00—were adequately shown.

5. United States v. Cook, 5 Cir., 1969, 419 F.2d 1306; Thurmond v. United States, 5 Cir., 1967, 377 F.2d 448. *Thurmond* involves personal property *stolen* from a military base and a charge under 18 U.S. C.A. § 661, set out in note 2, *supra*.

6. The government concedes that receipt or concealment of the stolen property within the confines of Reese Air Force Base is a necessary element of the crime. Government's brief at 22.

time he did not notice any of the equipment missing.[7]

The following afternoon, September 4, the Neal Ford Foundation returned to the Officers' Club to move their equipment to the Non-commissioned Officers' Club where they were to play the next night. When they arrived they found that some of their equipment was missing. The missing property consisted of an amplifier, two boom microphone stands, microphones, and one tambourine.

After notifying the proper authorities Neal Ford began making his own inquiries to determine the location of his band's equipment. From the selective nature of the theft, he apparently believed that the equipment had been stolen by another band. He learned that Appellant's band (Cleo's Funky Express), which had recently played at the Reese Air Force Base Officers' Club, was performing at the Log Cabin Club in Post, Texas, some 50 miles from the base. Ford and his band left for Post, Texas, to see if this other group was using their equipment. Ford and his band sought the help of the Garza County Sheriff[8] and went with him to the Log Cabin Club where they confronted Appellant. Ford identified the stolen equipment which was being used by Appellant's group and the Sheriff took Appellant and the property in tow. Appellant made incriminating statements during the course of his arrest and detention which were admitted at trial. None of these statements would have tended to prove that Appellant possessed, received and concealed the property *within*

*the confines of Reese Air Force Base*. The upshot of these statements was that Appellant had purchased the equipment knowing it was stolen but that he did not steal it himself.[9]

After stipulating that Reese Air Force Base was a government reservation within the exclusive jurisdiction of the United States, Appellant called Brenda Davis. She had been drinking and riding around with Townsend who was also in the company of Eva Lois Morin and Albert J. Thomas in Thomas's car.

Brenda Davis testified that the other three picked her up that evening at about 9:30 and that they went to Reese Air Force Base after having been drinking heavily. They first visited the Officers' Club at 11:00 a. m. when all four went in. They stayed a short time and continued "riding around" until they went back the second time—at about 1:00 a. m. Appellant went in alone and stayed five or ten minutes. She saw Appellant as he came out of the Club empty-handed. He did not open the trunk of the car. However, Appellant had earlier stated to her that he was going to the Club to pick up some equipment, but that no equipment was ever picked up. The other occupants of the vehicle testified to substantially the same facts which included statements that they were together until 3:00 a. m. and that no equipment was picked up. None of them recalled having heard anything about any equipment being picked up.

The members of Cleo's Funky Express testified that they first saw the stolen[10] band equipment the evening of Septem-

---

7. For all we can discern from the record it is possible—even likely—that someone would have had time to remove the equipment in the 30 to 40 minutes between Appellant's being shown out and the securing of the doors. However, the simple answer to this is that the jury found Defendant-Appellant innocent of returning and stealing the equipment.

8. Post, Texas, is located in Garza County.

9. Because the evidence—which we need not detail—of Appellant's control over

the amplifier and other equipment is unequivocal, we are not troubled, as we might otherwise be, that at the time of the arrest he was probably not technically in sole possession of the property.

10. The record does not suggest—and we make no suggestion—that these persons knew the equipment was stolen. As the leader and manager Appellant took on the job of acquiring the equipment for the group. None of the other members inquired—so far as the record discloses—as to the source of the equipment.

ber 4—the theft having occurred in the early a. m. of that day—as they were loading their cars in Lubbock, Texas, some ten miles from Reese Air Force Base, under Appellant's direction. The only evidence that the government produced of Appellant's having received and concealed the property on Reese Air Force Base is the statement of Brenda Davis that Appellant told· her he was going to pick up some equipment. If the question were Appellant's knowledge of the stolen character of the property we would have no difficulty in concluding that a guilty verdict could stand. However, when considered in the context of all the evidence including that of Sergeant Edwards and Brenda Davis that no equipment was missing or picked up, this statement—which did not on its face imply that the "picking up" was to be by theft—is not sufficient to sustain the conviction. And if the presumption from possession is not available we are forced to conclude that the government produced no evidence that Appellant received and concealed the property *while within jurisdiction of the United States.*

The court properly instructed the jury that it could conclude on the basis of Appellant's possession of the recently stolen property that he had participated in its theft and find him guilty of the theft. Under our cases [11] the jury could permissibly infer that Appellant knew that the amplifier was stolen and was a participant in the theft. The court did not instruct the jury that any other inferences could be drawn. Appellant does not challenge this instruction, as the government seems by its response to believe, nor would there be any purpose since he was acquitted of the charge of theft.

The government tries to save the conviction by arguing that the admitted possession and ample basis for imputing knowledge of the stolen character permitted the jury to infer that Appellant received the property on the military reservation. The inference drawn from possession of recently stolen property which would allow us to affirm conviction for theft or for receiving stolen property is of ancient and venerable vintage. On request of the Court the parties have filed supplemental briefs on the specific question of whether to the permissible inference of receiving (or concealing) stolen property the further inference can be drawn that the receipt or concealment of the stolen property occurred *within the confines of Reese Air Force Base.* We hold that it cannot.

 Although availability of such inferences should normally be defined in the jury charge we nevertheless believe that if we were to find the inference reasonable we would not consider the jury's drawing the inference grounds for reversal simply because they were not instructed that they might draw it. A jury may draw the reasonable inferences which the evidence warrants.[12] The inference is not less reasonable because the court fails to point out that it is one that can be drawn from the evidence. If the inference of participation in theft which is distilled from possession of recently stolen property were not a reasonable inference based on common experience it would have to be struck down in the light of present constitutional doctrine, which requires "that there be a rational connection between the facts proved and the fact presumed." Tot v. United States, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed.2d 519; United States v. Romano, 1965, 382 U.S.

---

11. See note 5, *supra.*

12. Drawing inferences from the evidence before it is, besides judging the credibility of witnesses, the major function that the jury performs. No tenable thesis can be maintained that before a jury can draw an inference in a courtroom that its members ·would make without hesitation in everyday life, that it must be instructed that the inference is one that the law specifically recognizes. Of course, failure to instruct may be, and often is, a ground for reversal where preserved or under circumstances constituting plain error.

136, 86 S.Ct. 279, 15 L.Ed.2d 210; Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57; Vaccaro v. United States, 5 Cir., 1972, 461 F.2d 626.

■ There is an important difference between the inference from possession to theft and the inference from possession outside the jurisdiction of the United States to possession inside the jurisdiction of the United States. It comes down, not to a question of law as such, but to a question of geography. The difference is simply this, if possession would, as we have held, support the inference of theft it must support the inference of the location of the theft, because this theft could occur at only one single location. That is, the theft had to occur at the Officers' Club. On the other hand, the receiving and concealing of the stolen property could have occurred for the first time at any number of locations which were not within the special jurisdiction of the United States. In fact, the only evidence on the question first places Appellant in possession of the stolen equipment at Lubbock,

Texas—ten miles from the scene of the crime.

Because of the difference between the two inferences and the necessity that the act of concealing or receiving take place on the Base the numerous cases which hold that possession of recently stolen property gives rise to an inference of participation in the theft do not aid us in the decision of this case. Where, for example, as in Young v. Wainwright, 5 Cir., 1971, 439 F.2d 426, the Court held that possession of recently stolen property would support an inference of breaking and entering with intent to steal, the Court was dealing with a crime which could occur only in a single location, i. e., the location where the property was stolen during a burglary. Many cases [13] likewise deal with the inference of knowledge that the property was stolen when it is possessed by a defendant shortly after the theft. These cases are of no aid in deciding the case now before us.

Faced then with what is in effect a question of first instance [14] we must,

---

13. Jenkins v. United States, 10 Cir., 1966, 361 F.2d 615; Hale v. United States, 5 Cir., 1969, 410 F.2d 147. Additional problems may arise where possession is the crime, cf., United States v. Gordon, 5 Cir., 1970, 421 F.2d 1068, and United States v. Cameron, 5 Cir., 1972, 460 F.2d 1394.

14. The government's suggestion that Girson v. United States, 9 Cir., 1937, 88 F.2d 358 is authority for the proposition that the Courts have entertained and allowed the inference which would uphold this conviction is incorrect. That case dealt with the theft of government property. The theft of government property is presently covered by Section 641 of Title 18, U.S.C.A.

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

As is plain from a single reading of this section the crime of receiving and concealing government property does not contain an element of receiving and concealing *while* on territory of the United States. While it is probable that Congress could have made criminal the receiving and concealing of nongovernment property stolen from a federal reservation where the receiving and concealing occurred outside the federal reservation, the simple answer is that it did not. See United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed.2d 149. *Leary, supra,* clearly rejects the argument that because Congress could

and do, decide that such an inference may not be employed.

In summary, we cannot avoid an uneasiness that an injustice may be done by pushing this inference to a new geographical frontier. Although Shelly Townsend was most certainly guilty of some participation in the theft of the equipment of the Neal Ford Foundation,[15] this inference, whether charged by the Judge to the jury or used by it or an appellate court, rests on no confident assurance that it is more likely than not that he received the property on the Base. As Judge Godbold said "there is no substantial rational relationship between possession of stolen goods with knowledge of their illegal character and the facts surrounding the *manner* in which they were stolen" [emphasis in original]. United States v. Martinez, 5 Cir., 1972, 466 F.2d 679 (concurring).

 The evidence here suggests that Appellant was aware of the *manner* in which the theft occurred. But this suggestion is not the basis from which we can support a legal inference that he received and concealed them at the location of the theft or at some other spot on the Base. And suspicion that he did so is not enough to support a conviction. Cf. United States v. Gainey, 1965, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658.

Although the District Court should have, upon Appellant's motion, granted directed verdict at the close of the government's case this is obviously a case in which the interests of justice require a remand for a new trial, Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, which we may do under United States v. Musquiz, 5 Cir., 1971, 445 F.2d 963, 966, since a motion for new trial was filed. The government should have the opportunity to prove if it can, facts showing that Appellant received or concealed the goods while still on Reese Air Force Base.

Reversed and remanded for new trial.

---

have made such an action criminal, the law will allow an inference that the commission of the action that Congress could have criminalized demonstrates the commission of the related action that Congress did criminalize.

15. This may be no victory for the Appellant. If prosecution is possible under the Texas law, and we intimate no opinion as to whether this is the case, the penalty is considerably stiffer.

Vernon's Rev.Pen.Code and Art. 1430 provides:

"Whoever shall receive or conceal property which has been acquired by another in such manner as that the acquisition comes within the meaning of the term theft, knowing the same to have been so acquired, shall be punished in the same manner as if he had stolen the property."

and Article 1421 of the same code provides:

"Theft of property of the value of fifty dollars or over shall be punished by confinement in the penitentiary not less than two nor more than ten years."