ACCEPTED
03-14-00473-CR
4146323
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/13/2015 1:51:41 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00473-CR**
**IN THE**
**COURT OF APPEALS**
**OF THE THIRD SUPREME JUDICIAL DISTRICT**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/13/2015 1:51:41 PM
JEFFREY D. KYLE
Clerk

_____

SHAWN MICHAEL WALKER,
Appellant,

v.

STATE OF TEXAS

_____

Appeal in Cause No. 72029
in the 264th District Court of
Bell County, Texas

_____

**REPLY BRIEF FOR APPELLANT SHAWN MICHAEL WALKER**

_____

JOHN A. KUCHERA
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

# Table of Contents

          Page

Table of Contents ................................................ ii

Table of Authorities ............................................ iii-v

*Walker never said that the pink methamphetamine was his and that he*   1-5
*believed it to be only "cut"*

*To separately analyze each individual location where methamphetamine*   5-7
*was found (to determine if an inference of possession is warranted) is not*
*the same as addressing each "affirmative link" separately*

*It is not within the province of the jury to determine whether inferences*   8-19
*it makes are reasonable. And the inferences the State asks this Court*
*to make are not reasonable because they are not supported by*
*a "chain of factual evidentiary antecedents."*

    *(i) Rules for determining whether an inference is reasonable*   9-11
    *(ii) Instructive cases – inference of possession was not reasonable*   11-13
    *(iii) Instructive cases – inference of possession was reasonable*   13-15
    *(iv) The State's inferences are not reasonable*   15-19

Certificate of Service ........................................... 19

Certificate of Compliance ....................................... 20

# Table of Authorities

**Page(s)**

**Cases**

*Brewer v. State*,
126 S.W.3d 295, 297 Tex.App. ........................................................................10

*Brown v. State*,
911 S.W.2d 744 (Tex. Crim. App. 1995) ..........................................................6

*County Court of Ulster County, N.Y. v. Allen*,
442 U.S. 140 (1979)..........................................................................................9

*Evans v. State*,
202 S.W.3d 158 (Tex. Crim. App. 2006) ...........................................5, 6, 7, 8, 14

*Evans v. State*,
98 So. 440 (Miss. 1924)...................................................................................15

*Fisher v. State*,
121 S.W.3d 38 (Tex.App.—San Antonio 2003, pet. ref'd)..............................11

*Franco v. State*,
82 S.W.3d 425 (Tex. App.—Austin 2002, pet. ref'd)......................................10

*Grant v. State*,
989 S.W.2d 428 (Tex.App.—Houston [14th Dist.] 1999, no pet.) ....9, 14, 15, 17

*H & R Block E. Enterprises, Inc. v. Swenson*,
2008 WI App 3, 307 Wis. 2d 390, 745 N.W.2d 421 .........................................8

*Luke v. State*,
No. 14-99-01358, 2001 WL 82934 (Tex.App.—Houston [14th
Dist.] 2001, no pet.) (unpublished)............................................................17, 18

*Mahaffey v. State*,
364 S.W.3d 908 (Tex. Crim. App. 2012) ........................................................10

*Marquez v. State*,
921 S.W.2d 217 (Tex. Crim. App. 1996) ........................................................10

*Moreno v. State*,
821 S.W.2d 344 (Tex.App.-Waco 1991, pet. ref'd)................................................6

*Nguyen v. State*,
222 S.W.3d 537 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ...............11

*Paulman v. State*,
No. 2-07-291-CR, 2008 WL 4531707 (Tex.App.—Fort Worth Oct.
9, 2008, pet. dism'd) (unpublished)..........................................................6

*People v. Davis*,
663 N.E.2d 39 (Ill. App. Ct. 1996) ......................................................10

*Peters v. Texas Dept. of Pub. Safety*,
404 S.W.3d 1 (Tex.App.—Houston [1st Dist.] 2013, no pet.)...........................8

*State v. Guinn*,
242 S.W.3d 479 (Mo. Ct. App. 2008) .......................................................13

*State v. McClain*,
968 S.W.2d 225 (Mo. Ct. App. 1998) .................................................6, 12, 13

*State v. Moiser*,
738 S.W.2d 549 (Mo. Ct. App. 1987) ........................................................6

*Tot v. United States*,
319 U.S. 463 (1943)..........................................................................9

*United States v. Hernandez-Beltran*,
867 F.2d 224 (5th Cir. 1989) ...............................................................6

*United States v. Longoria*,
569 F.2d 422 (5th Cir. 1978) .............................................................18

*United States v. Stewart*,
145 F.3d 273 (5th Cir. 1998) .............................................................4, 5

*United States v. Townsend*,
474 F.2d 209 (5th Cir. 1973) .........................................................9, 11, 12

*Young v. Wainwright*,
439 F.2d 426 (5th Cir. 1972) ...............................................................12

**Other Authorities**

Black's Law Dictionary (6th ed. 1990) ..................................................................10

New Webster's Dictionary of the English Language  (1971)..................................10

**IN THE**

**COURT OF APPEALS**

**OF THE THIRD SUPREME JUDICIAL DISTRICT**

_____

SHAWN MICHAEL WALKER,
    Appellant,


   v.                                         **No. 03-14-00473-CR**


STATE OF TEXAS

_____

Appeal in Cause No. 72029
in the 264th District Court of
Bell County, Texas

_____

**REPLY BRIEF OF APPELLANT SHAWN MICHAEL WALKER**

_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

     NOW COMES SHAWN MICHAEL WALKER, Appellant, by and through undersigned counsel, and submits this reply brief pursuant to the provisions of the Texas Rules of Appellate Procedure. Appellant raised two issues in his principal brief. The State has filed its Brief. This Reply Brief is a response to several assertions made by the State regarding Walker's first issue. Appellant otherwise rests on his principal brief.

1

**Regarding Walker's first issue:**  Whether the evidence was sufficient to sustain Walker's possession with intent conviction as a principal.

**1.**  The State repeatedly states that there was evidence that Walker actually said that the pink methamphetamine was his but that he believed it to be only "cut":

> The appellant stated that the pink substance was his, but insisted that it was not methamphetamine but only "cut", apparently referring to MSM.  (RR5 – 13, 21, 23).  He identified the picture of that pink substance recovered from the van.  (State's Exhibit 10).  (RR5 – 11).

*State's Brief, pg. 7.*

> [Appellant] admitted that [the pink methamphetamine] belonged to him but insisted that it was "cut" instead of methamphetamine itself.

*State's Brief, pg. 14.*

> Appellant . . . admitted ownership of the "pink" methamphetamine, while claiming that it was only "cut."

*State's Brief, pg. 15.*

> The fact that [Appellant] admitted possession of what tested as more than 5 grams of methamphetamine while claiming that it was only a substance dealers used to dilute and add weight to the controlled substance surely supports an inference that he was aware of the contraband in the van and exercised care, custody, control, or management of it.

*State's Brief, pgs. 15-16.*

> Appellant admitted that the "pink" methamphetamine belonged to him, while denying its identity.

*State's Brief, pg. 19.*

> The Appellant claimed ownership of the "pink" methamphetamine

2

found near a major quantity, expressing the mistaken belief that it was only "cut." There was nothing in the evidence to show why he would possess "cut" except as part of the distribution of the methamphetamine.

*State's Brief, pg. 22.*

**Appellant's reply**

Walker *never* said the pink methamphetamine was his and he *never* said it was "cut." Walker did not testify at trial. The State did introduce a videotaped interview of Walker - State's Exhibit 24. It is worth noting that the State's brief does not cite to the interview itself. This is because nowhere in that interview did Walker ever say the pink methamphetamine was his and nowhere in the interview did he ever say he thought it was cut.[1] The State instead cites to the trial testimony of what others said about the interview:

Vol. 5, pg. 13:

State: Now, the pink methamphetamine, the stuff that the defendant said was his and that you had the conversation with him about?

Defense Counsel: Objection. Misstatement of the evidence.

*Here, the "testimony" is actually a question posed by the State to which Walker objected as being a misstatement of the evidence.*

Vol. 5, pg. 21:

---

[1] Walker did say at one point "I don't know how she got it pink." Ex. 24, 4:10:01.

State:  In the interview, the defendant talks about MSM, correct?

Detective Mallow:  Yes, sir.

> Vol. 5, pgs. 22-23:

State:  Now, in this case, in your interview, you talked to the defendant about the pink dope, correct?

Detective Mallow:  Yes, sir.

State:  And that's what he was primarily focused on, on testing it and making sure that it is dope?

Detective Mallow:  Right.  Because he told me it was MSM.

*But in the actual interview, Walker never says the words "cut" or MSM."*

"We have seen the tape."  This quote comes from *United States v. Stewart,* 145 F.3d 273 (5th Cir. 1998) wherein the Fifth Circuit reversed appellant's aiding and abetting possession with intent to deliver cocaine conviction.  Stewart was driving a vehicle (that belonged to the passenger) and was stopped for a traffic violation.  Stewart hesitated when asked for consent to the search the vehicle but the passenger gave consent to search and two weapons were found.  As officers were searching the passenger incident to arrest, they found 96 grams of crack cocaine in his underwear.  *Id.* at 275.  The government relied on the arresting officer's testimony regarding Stewart's conduct.  *The Fifth Circuit relied instead on the videotape of the incident:*

> [T]he government offers evidence from Garney [arresting officer] that Stewart appeared nervous during the traffic stop.  *Having reviewed the*

4

*videotape* recording of the entire stop, we find no support for the proposition that Stewart was unusually nervous or fidgety. Stewart was no more nervous during the stop than any other citizen who has been stopped on the side of the road by a police officer and required to stand outside his vehicle for more than forty minutes. . . . The government contends that Stewart hesitated before giving consent to search the vehicle, and then shrugged non-committally. The government cites this conduct as evidence of guilty knowledge. *We have seen the tape.* Once again, there is nothing surprising about Stewart's conduct. The car was not his. (emphasis added)

*Id.* at 278.

Likewise in the instant case, this Court need not defer to the trial testimony of the State's witnesses as to what said Walker supposedly said in the interview – this Court can simply listen to the interview to hear what he actually did say – and did not say.

>>>>>>>

**2.** The State takes Walker to task for analyzing the "evidentiary links" separately instead of as a whole, citing *Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006):

The Appellant attempts to take these evidentiary links and separately consider them, arguing in essence that each link alone is insufficient to prove possession. That, however, is not the test, but rather the question is whether all the evidence, direct and circumstantial, when combined establishes a link with the contraband.

*State's Brief, pg. 15.*

**Appellant's reply**

5

The State confuses multiple evidentiary links with multiple locations of a controlled substance. As Walker pointed out in his principal brief (pages 6-7), possession is "location specific"; i.e. when a controlled substance is found in multiple locations, each location must be analyzed separately to determine whether there is evidence tending to tie the defendant to that location. In support of this argument, Walker specifically cited as authority *Brown v. State,* 911 S.W.2d 744 (Tex. Crim. App. 1995); *Moreno v. State,* 821 S.W.2d 344 (Tex.App.-Waco 1991, pet. ref'd); *United States v. Hernandez-Beltran,* 867 F.2d 224 (5th Cir. 1989) and *Paulman v. State,* No. 2-07-291-CR, 2008 WL 4531707 (Tex.App.—Fort Worth Oct. 9, 2008, pet. dism'd) (unpublished). The State's brief makes to attempt to address these cases.[2]  The State's reliance on *Evans v. State* is inapposite. The controlled substance at issue in *Evans* (cocaine) was all found in one place – not in multiple locations:

> Immediately in front of appellant—within one foot of his arm—was a coffee table with numerous baggies of cocaine and pill bottles, also containing cocaine.

---

[2] Other instructive cases include *State v. McClain,* 968 S.W.2d 225, 226-227 (Mo. Ct. App. 1998) (finding that the defendant's possession of methamphetamine was insufficient evidence to connect him to bag containing items consistent with "meth lab equipment" that was found in a garage closet, despite the fact the defendant was at the garage and he told the police that he saw another person bring the bag into the garage and where the bag was located) and *State v. Moiser,* 738 S.W.2d 549, 558–59 (Mo. Ct. App. 1987) (holding that despite the fact there was sufficient evidence to prove defendant possessed psilocybin mushrooms located in a box in the dining room, the state provided insufficient evidence that the defendant possessed marijuana located in various other locations in the house).

*Evans,* 202 S.W.3d at 160.

The State's failure to recognize the need to consider the location of each of the items of methamphetamine on its own merits is evidenced by the fact that the State continues to treat all five items of methamphetamine as a single unit:

> When all the evidence, direct and circumstantial, is considered in the light most favorable to the verdict, the combined logical force of that evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that the Appellant possessed *the methamphetamine* with the intent to deliver as charged in the indictment either individually, or as a party, or both.

*State's Brief, pg. 10.*

> While in this case it is reasonable that the *quantity alone* is sufficient to support a finding of intent to deliver, other circumstances include the presence of the material used to dilute or increase the weight of methamphetamine that is sold. The only logical inference from that is that *the accompanying methamphetamine* was intended for delivery as no mere user would dilute or increase the weight of his drug.

*State's Brief, pg. 19.*

> *The Appellant and Tiffany Pierce were together in the van with a very large and valuable quantity of methamphetamine* and the items used to process it for sale. They both had methamphetamine on their person. Clearly, . . . a rational jury could have found from the evidence and rational inferences based upon that evidence, beyond a reasonable doubt that the Appellant possessed *the methamphetamine* with intent to deliver either by his own conduct, [or] as a party with Tiffany Pierce[.]

*State's Brief, pg. 23.*

>>>>>>>>>>>>>>>>>>>>>>>

**3.** The State appears to cite *Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006) for the proposition that the reasonableness of inferences made by jurors in support of the verdict is a *question of fact*, and therefore "cannot be erroneous:

> Courts reviewing all evidence in the light most favorable to the verdict must assume that jurors made all inferences in favor of their verdict so long as reasonable minds could disregard all other inferences. Where the parties may disagree about the logical inferences from undisputed facts, the choice made by the fact finder cannot be erroneous.

*State's Brief, pg. 13.*


**Appellant's reply**

The State cites *Evans* for a proposition for which it does not stand. The issue of whether or not an inference is reasonable is a *question of law. H & R Block E. Enterprises, Inc. v. Swenson*, 2008 WI App 3, 307 Wis. 2d 390, 398-99, 745 N.W.2d 421, 425. What *Evans* says is that if there are multiple *logical* inferences that can be made from undisputed facts, and those inferences are in conflict, a jury can properly choose between the reasonable inferences:

> Although the parties may disagree about the logical inferences that flow from undisputed facts, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."

*Evans,* 202 S.W.3d at 162-63. It is not up to the jury to decide whether an inference is reasonable. That is a job for the Court. *See Peters v. Texas Dept. of Pub. Safety,*

404 S.W.3d 1, 6 (Tex.App.—Houston [1st Dist.] 2013, no pet.) ("Although it is certainly true that a fact-finder can draw reasonable inferences from the record, the types of inferences that DPS argues are not 'inferences' at all – just mere speculation and conjecture."); *Grant v. State,* 989 S.W.2d 428, 434 (Tex.App.—Houston [14th Dist.] 1999, no pet.) ("[I]t is not a reasonable inference that another person placed a large and valuable amount of marijuana in appellant's car. Such an alternative explanation for the presence of the marijuana is incredible."); *United States v. Townsend,* 474 F.2d 209, 213 (5th Cir. 1973) ("A jury may draw the *reasonable* inferences which the evidence warrants.").

*(i) Rules for determining whether an inference is reasonable*

"It is often necessary for the trier of fact to determine the existence of an element of the crime – that is an 'ultimate' or 'elemental' fact – from the existence of one of more 'evidentiary' or 'basic' facts." *County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 156 (1979). To do so is to make an inference. *Id.* However, for an inference to be reasonable there must be a rational connection between the facts proved and the fact inferred. *See Tot v. United States,* 319 U.S. 463, 467 (1943). "A reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents. If an alleged inference does not have a chain of factual antecedents, then within the purview of the law it is not a reasonable inference but

is instead mere speculation." *People v. Davis,* 663 N.E.2d 39, 44 (Ill. App. Ct. 1996) "[W]ithout a single factual evidentiary antecedent to support it the State's alleged inference that Davis had the opportunity to commit the homicide cannot bear water." *Id.* at 45.

As Walker noted in his principal brief:

"In the law of evidence, an inference . . . is a logical consequence flowing from a proven fact." *Brewer v. State,* 126 S.W.3d 295, 297 Tex.App.— Beaumont 2004, pet. ref'd). "Logic" is "the apparently unavoidable cause and effect relationship of events leading to a particular conclusion." New Webster's Dictionary of the English Language 562 (1971). "Logical relevancy" is defined thusly:

Existence of such a relationship in logic between the fact of which evidence is offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter. Black's Law Dictionary 942 (6th ed. 1990).

*(Appellant's Brief, pg. 15).* Examples: *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) ("Here, the record reveals that the highway on which appellant was driving was comprised of 'clearly marked lanes for vehicular travel' and, therefore, was a 'laned roadway' as described in the definitions statute. . . . It logically follows that once the clear markings on that highway terminated, so, too, did the corresponding 'lane.'"); *Marquez v. State,* 921 S.W.2d 217, 224 (Tex. Crim. App. 1996) (Because a defendant has a right to a jury trial, it logically follows that he has the right to waive his right to a jury trial); *Franco v. State*, 82 S.W.3d 425, 428 (Tex. App.—Austin 2002, pet. ref'd) ("If Franco was willing to take a breath

test after being told that he would lose his driver's license for ninety days if he refused, it logically follows that he would have been willing to take the test if he had also been told that a refusal would result in the additional loss of his commercial license for one year."); *Fisher v. State,* 121 S.W.3d 38, 40-41 (Tex.App.—San Antonio 2003, pet. ref'd) (Given that it is improper for an expert witness to offer a direct opinion as to the truthfulness of another witness, "it logically follows that a lay witness is not permitted to offer an opinion that another witness is truthful."); *Nguyen v. State,* 222 S.W.3d 537, 541 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("If the defendant can waive his right to object that no PSI was prepared, it logically follows that a defendant can waive the right to complain about a part of the PSI being left out.").

### *(ii) Instructive cases – inference of possession was not reasonable*

In *United States v. Townsend,* 474 F.2d 209 (5th Cir. 1973), wherein the defendant was convicted of theft of equipment from a military reservation (the federal offense charged required proof that the theft actually took place on a military reservation), the question addressed was "whether possession of the property *off* the military base can give rise to the inference that the property was received or concealed *on* the base." *Id.* at 211. Under the evidence adduced, the Fifth Circuit answered the question in the negative:

There is an important difference between the inference from possession to theft and the inference from possession outside the jurisdiction of the United States to possession inside the jurisdiction of the United States. It comes down, not to a question of law as such, but to a question of geography. The difference is simply this, if possession would, as we have held, support the inference of theft it must support the inference of the location of the theft, because this theft could occur at only one single location. That is, the theft had to occur at the Officers' Club. On the other hand, *the receiving and concealing of the stolen property could have occurred for the first time at any number of locations which were not within the special jurisdiction of the United States. In fact, the only evidence on the question first places Appellant in possession of the stolen equipment at Lubbock, Texas-ten miles from the scene of the crime.* (emphasis added)

*Id.* at 214. The Fifth Circuit went on to contrast this set of facts from the facts in

*Young v. Wainwright,* 439 F.2d 426 (5th Cir. 1972) wherein an inference of breaking

and entering was reasonable based on possession of stolen property:

[P]ossession of recently stolen property would support an inference of breaking and entering with intent to steal [where the] crime . . . could occur only in a single location, i. e., the location where the property was stolen during a burglary.

*Townsend,* 474 F.2d at 214.

In *State v. McClain,* 968 S.W.2d 225 (Mo. Ct. App. 1998), wherein the

appellant was convicted of attempted to manufacture methamphetamine, the relevant

facts were as follows. Appellant was detained in the service area of an auto repair

garage. In the closet of the garage office, a blue bag containing items "consistent

with meth lab equipment" were found. Appellant was searched and found to be in

possession of a pouch containing powder that tested positive for methamphetamine.

12

When questioned, Appellant stated that the blue bag had been behind the garage when he got there and another individual brought it inside. *Id.* at 226. The State argued on appeal that the pouch with powder found on Appellant's person "indicates that Appellant had a familiarity with methamphetamine." The Court of Appeals disagreed:

> Although Appellant told [the officer] that the blue bag was behind he garage when "they" got there, nothing in the evidence indicates the bag was then unzipped. However, even if it was, there is no evidence that Appellant was close enough to the bag to see what was in it. Furthermore, even if he saw the contents, and even if he recognized them as items used to manufacture methamphetamine, such knowledge alone does not support a finding that Appellant had possession of the items.

*Id.* at 227.

In *State v. Guinn,* 242 S.W.3d 479 (Mo. Ct. App. 2008), the evidence showed only that the defendant had walked out of a room in which there was methamphetamine on a scale. *Id.* at 483. The Missouri Court of Appeals held that it was not reasonable to infer that because he was walking out of the otherwise unoccupied room, he had been the person measuring the methamphetamine: "[T]he mere possibility that Guinn saw the methamphetamine on the scale and was the closest person to it when he was arrested" did not create a reasonable inference that he possessed it. *Id.* at 484.

*(iii) Instructive cases – inference of possession was reasonable*

13

*Evans v. State,* 202 S.W.3d 158 (Tex. Crim. App. 2006):

The State argues that the single most important link or connection between appellant and the fourteen grams of cocaine rocks is the simple fact that he was sitting directly in front of them. They were within arm's reach; the coffee table was less than a foot away. This evidence constitutes two extremely strong "presence" and "proximity" links. Appellant was not merely present in a house with drugs cached away somewhere, *they were right under his nose.* The drugs were *in plain view*—a third link. *He was alone in the house*—a fourth link. He immediately admitted that he knew why the police had walked in the door—*"Drugs."* That is a fifth link. He received mail at 923 Lombrano, thus raising a reasonable inference that *he lived there*, which, in turn, raises a reasonable inference that he had actual care, custody, and control of items found in plain view on the coffee table. This is a sixth link. He had *$160 in twenties in his pocket*, but he was apparently unemployed. This is a seventh, albeit weak, link. The State argues that the sum total of this circumstantial evidence is sufficient to support a rational jury's finding, beyond a reasonable doubt, that appellant exercised actual care, custody, control, or management of the fourteen grams of cocaine on the coffee table. We agree.  (emphasis added)

*Id.* at 163.

In *Grant v. State*, 989 S.W.2d 428 (Tex. App.—Houston [14th Dist.] 1999, no pet.), the Fourteenth Court held that the jury could reasonably infer possession:

[A]ppellant was the *sole occupant and driver* of the car; *appellant had been driving the car for a couple of days as part of his job;* the marijuana was under the driver's seat, and thus close to appellant; appellant had the only set of keys to the car; the closed bag containing the marijuana could be readily seen by anyone opening the rear passenger door and looking inside the car; the marijuana was wrapped securely enough that its odor did not spread throughout the car; and the *drugs were not in a secret compartment of the car.*

*Id.* at 434; *see also Evans v. State,* 98 So. 440, 442 (Miss. 1924) (two buckets of whiskey, along with mash, found at recently operated still, and defendant coming and going therefrom allowed for reasonable inference that defendant manufactured or assisted in the manufacture of the two buckets of whiskey).

### *(iv) The State's inferences are not reasonable*

The State says that all that can be inferred about Pierce's relationship to the van is that she was driving the van:

> Ms. Pierce, who had no relationship to the van belonging to the Appellant's girlfriend but was driving the van occupied by the Appellant[.]

*State's Brief, pg. 23.* The State is ignoring the additional facts that the van was full of women's clothes (no mention of men's clothes) and it "[a]ppeared like somebody might have been living in the vehicle." 4 RR 49, 60, 68, 71. The large items of methamphetamine were found in a bag containing women's clothing ("bag behind the driver's seat" – 40.58 grams) and inside a laundry bag wrapped in a pair of women's pants ("frisbee methamphetamine" – 56.92 grams). 4 RR 51-52, 58-60, 88, 103. These facts would allow an inference of more than that Pierce was simply driving the van. They would also allow the reasonable inferences that she had been

living out of the van and that she had cached the large quantities of methamphetamine.

The State argues that because there was evidence that the van belonged to Walker's girlfriend or wife, he therefore had the sole right to control the van.

> Appellant told both the arresting officer and the detective that the van belonged to his girlfriend or wife. He stated that Ms. Pierce was not the person in question and that the other two people in the van were recently arrived passengers. The jury could reasonably find from that Appellant had the right to control that van. . . . *Someone had control over it or the right to control it.*

*State's Brief, pg. 16.*

> No one else in the van had any right to control the van except the Appellant.

*State's Brief, pg. 22.* But does the "chain of factual evidentiary antecedents" allow one to reasonably infer this? When Walker was asked to consent to a search of the van, he said the van didn't belong to him and thus he couldn't give permission for a search. 4 RR 25-26. As noted above, it appeared that a woman had been living out of the van. And a woman was driving the van. While it cannot reasonably be inferred that Pierce owned the van, it can certainly be inferred that she did exercise some control over the van. Even if some control of the van by Walker can be inferred, he was not the only person who had control. However, the "ultimate" "elemental" facts that State had to prove were possession of methamphetamine with intent to distribute – not control of the vehicle. As noted above, given that the large

16

quantities of methamphetamine were cached with women's clothing allows for the reasonable inference that Pierce possessed them – not Walker. Unlike the defendant in *Grant*, who had been driving the vehicle as the sole occupant for two days, there is no "factual evidentiary antecedent" in this case establishing (1) that Walker had been in the van for more than a short period of time, or (2) that he had ever been in the van as the sole occupant.

The State cites *Luke v. State,* No. 14-99-01358, 2001 WL 82934 (Tex.App.— Houston [14th Dist.] 2001, no pet.) (unpublished) in support of its argument that Walker's "close relationship" with the van's owner somehow "linked" him to the methamphetamine found therein. *State's Brief, pg. 16.* The State fails to point out the other "chain of factual evidentiary antecedents" present in *Luke* (wherein the defendant was essentially caught with a small bag of cocaine in his hand):

> Luke argues that his mere proximity to the crack cocaine is the only evidence linking him to the possession of it, and that such evidence is legally and factually insufficient to support this conviction. Luke, however, overlooks the fact that mere proximity is not the only evidence linking him to the possession of the substance. In fact, *Luke exercised sole possession over the vehicle where the crack cocaine was found until just minutes before the traffic stop,* not to mention the fact that he is "closely related" to the owner of the vehicle. At the time of the traffic stop, Luke sat in the passenger side of the vehicle, which is where Officer Johnson found the 5.5 gram crack cocaine cookie. Moreover, once the officers pulled over the vehicle, *Johnson observed Luke making a furtive gesture in an apparent attempt to hide the crack cocaine. Johnson found the crack cocaine in the vehicle partly because of this furtive gesture and partly because when he looked in the car he saw a bit of a plastic bag and a corner of the cookie.* (emphasis added)

*Luke,* 2001 WL 82934, at *3.

The State also suggests that it is reasonable to infer that no mere user would be in possession of material (MSM) used to increase the weight of the methamphetamine:

> While in this case it is reasonable that the quantity alone is sufficient to support a finding of intent to deliver, other circumstances include the presence of the material used to dilute or increase the weight of methamphetamine that is sold. *The only logical inference from that is that the accompanying methamphetamine was intended for delivery as no mere user would dilute or increase the weight of his drug.*

*State's Brief, pg. 19.* The State's inference, as a general proposition, is certainly reasonable. But it begs the question – who possessed the MSM? Just as the defendant in *McLain,* there is no evidence that Walker ever saw the MSM, let alone possessed it. For the reasons set forth above, the reasonable inference is that Pierce possessed the MSM – not Walker.

That State also makes the gigantic (and unwarranted) leap of inferring that because Walker had a user amount of methamphetamine on his person, he was therefore also in possession of the large amounts found in the van:

> The Appellant and Tiffany Pierce were *together in the van with a very large and valuable quantity of methamphetamine* and the items used to process it for sale. *They both had methamphetamine on their person.*

*State's Brief, pg. 23.* Walker would ask this court to note *United States v. Longoria,* 569 F.2d 422 (5th Cir. 1978), summarized in Appellant's principal brief at pages 32-

18

33, wherein the Fifth Circuit reversed appellant's conviction, holding inter alia, that the fact that appellant had traces of marijuana in her pocket book did not establish knowledge of or an intent to distribute the 176 pounds of marijuana found in suitcases located in the trunk of the vehicle.

Respectfully submitted,
/s/ John A. Kuchera
John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

**Certificate of Service**

This is to certify that a true and correct copy of the above and foregoing Appellant's Reply Brief has this day been mailed to the office of Mr. Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513.

SIGNED this 13th day of February, 2015.

/s/ John A. Kuchera
John A. Kuchera,
Attorney for Shawn Michael Walker

## Certificate of Compliance with Rule 9.4

1.  This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i) because the brief contains 4,717 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman, size 14 font.

/s/ John A. Kuchera
John A. Kuchera,
Attorney for Shawn Michael Walker

Dated: February 13, 2015