# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2837

_____

United States of America

*Plaintiff - Appellee*

v.

Bob L. Woods

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 15, 2016
Filed: July 15, 2016

_____

Before SMITH and GRUENDER, Circuit Judges, and KETCHMARK,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Following a jury trial, Bob L. Woods was convicted of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1);

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, sitting by designation.

possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Woods appeals, alleging that the district court[2] erred when it denied his motion to suppress evidence. We affirm.

I.

On April 9, 2014, Sergeant David Austin DeLisle of the Portageville, Missouri Police Department observed Woods and a passenger exit a McDonald's drive-through in a grey Cadillac with heavily tinted windows. Sergeant DeLisle was familiar with Woods. He had received information that Woods was a drug trafficker and that his vehicle contained hidden compartments that he used to hide narcotics. After he saw Woods throw a piece of paper out of his car onto the street, Sergeant DeLisle decided to conduct a traffic stop. The stop occurred at 12:46 p.m.

Sergeant DeLisle told Woods that he had been stopped because of two potential traffic violations: his windows appeared to be tinted too darkly and he had been observed throwing litter on a public roadway. A test of the vehicle's windows revealed that they were not illegally tinted. During his initial conversation with Woods, Sergeant DeLisle noticed a fake iPhone that he believed—and later confirmed—was actually a set of digital scales. Sergeant DeLisle also detected a faint odor of marijuana. Woods told Sergeant DeLisle that he was traveling to Kennett, Missouri. However, Woods's passenger told another officer that they were going to Memphis, Tennessee.

---

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Abbie Crites-Leoni, United States Magistrate Judge for the Eastern District of Missouri.

Sergeant DeLisle asked Woods if he could search the vehicle, and Woods consented. Sergeant DeLisle then requested a drug-detecting canine; because he suspected that Woods stored illegal items in hidden compartments in his vehicle, DeLisle did not think that he would be able to find any contraband through a routine search without a drug-detecting canine. DeLisle issued citations to Woods for littering and for failing to provide proof of insurance. DeLisle estimated that it took between fifteen and twenty minutes to address the littering, window tint, and insurance issues. After issuing the citations, DeLisle extended the traffic stop to wait for the canine officer to arrive.

An officer with a drug-detecting canine arrived at the scene at 1:24 p.m., approximately forty minutes after DeLisle initiated the traffic stop. The canine alerted to the presence of narcotics inside the vehicle. At that point, DeLisle decided to impound the vehicle and take Woods to the police station for questioning. Officers searching the impounded vehicle found a compartment underneath the back seat containing marijuana, methamphetamine, cocaine, and a firearm.

Sergeant DeLisle and another officer interviewed Woods. Before questioning, DeLisle read Woods the *Miranda* warnings from a form. *See Miranda v. Arizona*, 384 U.S. 439 (1966). Woods refused to sign part of the form to acknowledge that he was waiving his *Miranda* rights. However, Woods told the officers that he was willing to speak with them. Woods admitted during the interview that the drugs and firearm belonged to him, not the passenger. Throughout the interview, Woods did not refuse to answer questions, invoke his right to counsel, or tell the officers that he did not want to speak with them any longer.

Woods was interviewed a second time two days later by federal law-enforcement officers. The officers read Woods his *Miranda* rights before questioning him. Woods stated that he understood his rights, agreed to speak with the officers, and again claimed that the drugs and firearm found in his vehicle belonged to him.

After his indictment, Woods filed a motion to suppress the physical evidence and his statements. He argued that he was unlawfully stopped and unlawfully detained. He also argued that the incriminating statements he made during both interviews should be suppressed because he did not waive his *Miranda* rights. The magistrate judge recommended that Woods's motion be denied. The district court adopted the report and recommendation over Woods's objection and denied the motion to suppress.

The items of physical evidence seized from the vehicle, as well as the statements Woods made during his interviews, were admitted at Woods's jury trial. The jury found Woods guilty of all three counts of the indictment. The district court sentenced Woods to an aggregate term of 180 months' imprisonment followed by three years of supervised release.

II.

Woods presents two challenges on appeal. First, he argues that the search of his vehicle violated his Fourth Amendment rights because Sergeant DeLisle continued detaining Woods in order to wait for a drug canine despite lacking reasonable suspicion to justify extending the traffic stop. Second, he argues that the officers violated his Fifth Amendment rights by questioning him without first obtaining a *Miranda* waiver. Woods asserts that the district court erred by denying his motion to suppress the evidence found in his vehicle and the incriminating statements he made during the interviews.

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Williams*, 796 F.3d 951, 957 (8th Cir. 2015), *cert. denied*, 577 U.S. ---, 136 S. Ct. 1450 (2016). "The district court's denial of a motion to suppress will be upheld unless it is not supported by substantial evidence, is based on an erroneous

-4-

interpretation of applicable law, or is clearly mistaken in light of the entire record." *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016).

A.

Woods argues that the traffic stop violated his Fourth Amendment rights. He does not challenge the initial stop, and he does not challenge the impoundment and search of his car following the drug-detecting canine's indication that his car contained narcotics. Instead, Woods argues that after officers issued him citations, any further detention to wait for the drug-detecting canine to arrive was unlawful.

An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation. *United States v. Anguiano*, 795 F.3d 873, 876 (8th Cir. 2015). However, in the absence of reasonable suspicion, police may not extend an otherwise-completed traffic stop in order to conduct a dog sniff. *See Rodriguez v. United States*, 575 U.S. ---, 135 S. Ct. 1609, 1615-16 (2015). The question, then, is whether Sergeant DeLisle had reasonable suspicion to extend the stop—after issuing the citations—to wait for a drug-detecting canine to arrive. If he lacked reasonable suspicion to expand the scope of the investigation, the twenty-minute extension of the stop would be unreasonable. *See id.* at 1613, 1616 (holding that, absent reasonable suspicion, seven- or eight-minute extension of traffic stop in order to conduct drug sniff violated Fourth Amendment). If DeLisle had reasonable suspicion to justify expanding the scope of the investigation, however, the extension of the stop would not violate the Fourth Amendment. *See, e.g.*, *United States v. Maltais*, 403 F.3d 550, 556-58 (8th Cir. 2005) (holding that detention of over ninety minutes to obtain a drug-detecting canine was reasonable when officer was aware that suspect's vehicle had previously been found to contain hidden compartments); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) (holding that eighty-minute wait for drug-detecting canine was reasonable).

To establish reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" further investigation. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The concept of reasonable suspicion is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Instead, when determining whether reasonable suspicion exists, we consider the totality of the circumstances. *United States v. Woods*, 747 F.3d 552, 556 (8th Cir. 2014).

Several factors support Sergeant DeLisle's reasonable suspicion of drug-trafficking and therefore justify the extension of the traffic stop. Sergeant DeLisle detected the odor of marijuana in Woods's vehicle. *Cf. United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (holding that smell of marijuana supported probable cause to search vehicle). DeLisle also observed in Woods's vehicle digital scales disguised as an iPhone. *Cf. United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (holding that officer had probable cause to search vehicle when he saw an "item commonly used in the manufacture of [drugs]" in plain view in vehicle). Sergeant DeLisle had received information that Woods was a drug trafficker and that his vehicle contained hidden compartments that Woods used to store narcotics. *See Maltais*, 403 F.3d at 555 (holding that officers had reasonable suspicion to detain defendant when they "knew that [his] vehicle had hidden compartments, that such compartments were frequently used in drug trafficking, [and] that intelligence information suggested [defendant] was involved in a drug smuggling ring"). Finally, the discrepancy between Woods's account of his trip and the account given by his passenger supported DeLisle's reasonable suspicion. *See United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003) (holding that conflicting statements given by driver and passenger permitted officer to expand the scope of traffic stop). We conclude that, based on the totality of the circumstances, DeLisle had reasonable suspicion that justified extending the traffic stop and that the roughly twenty-minute wait for the canine did not convert the otherwise lawful stop into an unreasonable detention. *See United States v. Bloomfield*, 40 F.3d 910, 917-19 (8th Cir. 1994) (holding that one-

hour detention waiting for canine was lawful when officer had reasonable suspicion of drug-related activity based on the totality of the circumstances).

B.

Woods next argues that the law-enforcement officers who interviewed him violated the Fifth Amendment because they questioned him after he refused to waive his *Miranda* rights. To establish a valid *Miranda* waiver, the Government must show that the waiver was knowing, intelligent, and voluntary. *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010).

The Government has made such a showing here. State police officers interviewed Woods immediately after his car was impounded, and federal law-enforcement officers interviewed him two days later. During both interviews, officers read Woods his *Miranda* rights before questioning him. In both instances, Woods acknowledged that he understood his rights, agreed to speak with the officers, and stated that the drugs and firearm found in his vehicle belonged to him. *See United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991) (holding that waiver may be inferred from the fact that a suspect responded to questions after being advised of his rights). Woods did not refuse to answer questions or tell the officers that he did not want to speak with them at any point during either interview. *See Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001) ("[T]o invoke one's right to remain silent, one must unequivocally express his desire to remain silent.").

Woods nonetheless claims that his statements are inadmissible because, before the first interview began, he refused to sign a form indicating that he waived his *Miranda* rights. He argues that his refusal to sign the form amounted to an assertion that he did not want to waive his rights.

We reject Woods's argument that law enforcement officers were required to cease questioning him when he refused to sign a waiver form. A defendant can validly waive his rights orally or in writing. *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976). A defendant's refusal to sign a written waiver form does not make his subsequent statements inadmissible. *Martin v. United States*, 691 F.2d 1235, 1239 (8th Cir. 1982) (upholding waiver, despite defendant's refusal to sign waiver form, because defendant was advised of his rights, acknowledged that he understood his rights, and answered officer's questions); *Klingler v. United States*, 409 F.2d 299, 308 (8th Cir. 1969) (same). We conclude that the district court properly denied Woods's motion to suppress.

## III.

For the foregoing reasons, we affirm.

_____