# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1441
_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Ray Wilson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: March 13, 2020
Filed: April 6, 2020
[Unpublished]
_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

A jury found Kevin Ray Wilson guilty of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), and 846. The district court[1] sentenced Wilson to 180 months' imprisonment. Wilson appeals the denial of his motion to suppress. We affirm.

Deputy Kent Shutt of the Lafayette County Sheriff's Department initiated a traffic stop of a vehicle that had made an unsafe lane change without signaling. Shutt approached the passenger side of the vehicle and asked the driver, Wilson, for his license, vehicle registration, and proof of insurance. As he was approaching, Shutt noticed the passenger, Kenneth Dowell, was bent down as if he was putting something underneath his seat. In response to Shutt's request, Wilson produced his license and a sales receipt for the vehicle, which indicated that Wilson had purchased the vehicle three days earlier. Shutt said that he would issue a warning and asked Wilson to accompany him back to his squad car. In the squad car, Wilson explained that he lived in Kentucky and that he and Dowell had traveled to Wichita, Kansas for a short time before heading home. Wilson further explained that the purpose of their trip was to visit Dowell's brother. Shutt observed that Wilson appeared to be very nervous during this exchange.

Shutt then left Wilson in the squad car and went to talk to Dowell, who had remained in Wilson's vehicle. Shutt noticed that Dowell also appeared to be nervous and was talking extremely rapidly. Dowell gave a conflicting explanation of his and Wilson's travels, saying that they had gone to Wichita to visit Dowell's sick niece. After obtaining Dowell's license, Shutt returned to the squad car, where he began to run Dowell's information and fill out the paperwork for the warning citation. In light of the conflicting explanation, Shutt again asked Wilson about the purpose of the trip. Wilson responded that he and Dowell had traveled to see Dowell's niece for the purpose of helping with her upcoming wedding.

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

-2-

During his trips from his squad car and Wilson's vehicle, Shutt had also noticed that the cargo area of Wilson's vehicle contained a tarp that was covering something. When Shutt asked what was underneath the tarp, Wilson responded that there was a spare tire and some tools. Shutt asked Wilson if there was anything illegal in his vehicle, to which Wilson replied no. Shutt asked Wilson for permission to search the vehicle, which Wilson refused. Shutt radioed in a request for a canine unit and completed the paperwork for Wilson's traffic violation while awaiting the arrival of the unit. When it arrived, a dog alerted that there were narcotics in the vehicle, whereupon Shutt and the other officers on scene searched Wilson's vehicle and discovered a spare tire that contained approximately ten pounds of methamphetamine. Officers also found more than $2,000 cash under the front passenger seat, about $1,600 in Wilson's front pocket, and a small bag of methamphetamine in the pocket of a coat stored behind the front passenger seat.

Wilson concedes that the initial traffic stop was legal, but he argues that because Shutt impermissibly extended it by further detaining him to wait for the canine unit, evidence obtained from the car search should have been suppressed. "An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." United States v. Woods, 829 F.3d 675, 679 (8th Cir. 2016) ("[I]n the absence of reasonable suspicion, police may not extend an otherwise-completed traffic stop in order to conduct a dog sniff." (citing Rodriguez v. United States, 135 S.Ct. 1609, 1615-16 (2015))). We review *de novo* whether particular facts add up to the reasonable suspicion needed to extend a stop. See United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002) (standard of review).

To determine whether an officer had reasonable suspicion to extend the stop, we consider the totality of the circumstances, taking into account the officer's experience and training. See United States v. Cotter, 701 F.3d 544, 547 (8th Cir. 2012). The officer needs to "identify specific and articulable facts which, taken

-3-

together with rational inferences from those facts, amount to reasonable suspicion that further investigation is warranted." United States v. Murillo-Salgado, 854 F.3d 407, 415 (8th Cir. 2017) (internal quotations and citations omitted). "An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." Linkous, 285 F.3d at 720.

The totality of the circumstances gave Shutt the grounds to extend the stop and order a dog sniff of the vehicle. When Shutt first approached the vehicle, he noticed that the passenger was bent over as if he was trying to hide something under the seat. Shutt observed that Wilson seemed very nervous, even after he told Wilson he was giving him only a warning. Wilson and Dowell gave inconsistent stories regarding the purpose of their trip during the course of being questioned. Shutt also noted that his suspicions were aroused because the vehicle was newly purchased, the men lacked luggage, and the trip was relatively brief, given the time it takes to travel from Kentucky to Kansas. These factors taken together established the requisite reasonable suspicion needed to extend the detention beyond the initial traffic stop. See, e.g., United States v. Davis, 943 F.3d 1129, 1133 (8th Cir. 2019) (affirming that "a combination of nervous behavior and suspicious travel plans creates a reasonable suspicion justifying a traffic stop's extension"); United States v. Bracamontes, 614 F.3d 813, 816 (8th Cir. 2010) (holding that reasonable suspicion was established by the driver and passenger's contradictory statements); United States v. Stachowiak, 521 F.3d 852, 856-57 (8th Cir. 2008) (holding that defendant's "furtive gesture" among other factors gave rise to reasonable suspicion). Wilson's Fourth Amendment rights were thus not violated by the justifiably extended nature of the traffic stop. See Woods, 829 F.3d at 679-80 (holding that waiting for canine unit was a reasonable extension of a traffic stop when officer had reasonable suspicion to suspect drug-trafficking).

The judgment is affirmed.

_____