# United States Court of Appeals
### For the Eighth Circuit
_____

No. 20-2039
_____

United States of America

*Plaintiff - Appellee*

v.

Stephen Mark Cox

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith
_____

Submitted: February 19, 2021
Filed: March 30, 3021
_____

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Stephen Cox entered a conditional plea of guilty to possession with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(A)(ii). He now appeals the district court's[1] denial of his motion to suppress evidence. We affirm.

On April 17, 2019, Arkansas State Trooper Christopher Short observed a white SUV steadily accelerating to closely approach a black pickup. When the pickup braked to take an exit, the SUV had to quickly apply its own brakes. Based on this observation, Trooper Short initiated a traffic stop of the SUV, which he later learned had been rented by Cox. Scott Green was driving, with Cox sitting in the passenger seat. After informing Green that he was following "a little bit close," Trooper Short stated that he did not intend to issue a ticket but nevertheless asked for identification. Upon learning the vehicle was rented, he asked to see a copy of the rental agreement and also asked the men about their line of work. Green responded that they were engaged in fugitive recovery.

Green accompanied Trooper Short back to the patrol car, where Trooper Short asked Green about the men's travel plans and purpose and then radioed dispatch to obtain Cox's and Green's criminal histories. Green replied by saying that they were traveling to Virginia in pursuit of a fugitive and planned to stay there for three days. Trooper Short then returned to the SUV and asked Cox similar questions. Cox could not remember the name of the fugitive they were pursuing, but told Trooper Short that they planned to spend only one day in Virginia. When asked about his criminal history, Cox admitted to a prior DUI conviction.

Trooper Short then returned to the patrol car and asked Green whether there were any weapons or drugs in the vehicle. Trooper Short noted that both men seemed to be nervous. Green responded that there were not any weapons or drugs in the car. When Trooper Short asked if he could search the vehicle, Green replied, "I don't

---

[1]The Honorable P. K. Holmes, III, United States District Judge for the Western District of Arkansas.

care." Dispatch then responded and reported that Cox had a prior drug charge in addition to the DUI conviction. Trooper Short again asked Green if he could search the SUV, and Green again said "I don't care." Green indicated to Trooper Short that both he and Cox had signed the rental paperwork. This exchange occurred about eight minutes after the traffic stop had begun.

Trooper Short then returned to the SUV, informed Cox that Green had consented to a vehicle search, and asked Cox to step out of the vehicle. Cox voiced no objection to the search and exited the vehicle, within which Trooper Short discovered seventeen kilograms of cocaine during his ensuing search.

"In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*." United States v. Woods, 829 F.3d 675, 678–79 (8th Cir. 2016) (citing United States v. Williams, 796 F.3d 951, 957 (8th Cir. 2015)). Because a traffic stop is a seizure that implicates the Fourth Amendment, it therefore must be judged for its reasonableness in light of the circumstances. Whren v. United States, 517 U.S. 806, 809–10 (1996).

Cox first argues that Trooper Short lacked probable cause to initiate the stop. "A traffic stop generally must be supported by 'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" United States v. Martin, 411 F.3d 998, 1000 (8th Cir. 2005) (quoting United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004)), abrogated on other grounds by Rodriguez v. United States, 575 U.S. 348 (2015). Cox argues that Trooper Short lacked probable cause because the government did not show that he specifically considered each element set forth in the Arkansas following-too-closely statute. See Ark. Code Ann. § 27-51-305(a). Cox's contention is analogous to the argument made by the defendant in Martin. See 411 F.3d at 1001 (defendant asserted that the officer lacked a basis to stop him in the absence of a finding that he actually violated the statutory

text). We made clear in that case that the determinative question is not whether a traffic violation had actually occurred, but "whether an objectively reasonable police officer could have formed a reasonable suspicion that [the driver] was committing a code violation." Id. Cox offers no basis to question the district court's finding that, based on the dash cam footage, Trooper Short's conclusion that the SUV was following too closely in violation of the relevant statute was objectively reasonable. See United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998) (officer's observation of following a motor vehicle too closely provided probable cause for the stop).

Cox argues in the alternative that Trooper Short lacked probable cause because Green was not at fault for the violation, as he was unable to slow down or change lanes while Trooper Short drove beside him. See Pargament v. State, 577 S.W.3d 761, 764 (Ark. Ct. App. 2019) (state failed to show probable cause for traffic violation when the vehicle was following too closely only because another vehicle pulled in front of it). This contention too is unsupported by the record. As the district court noted, the pickup's braking should not have been a surprise in light of the road sign indicating an upcoming exit. Moreover, Trooper Short's ability to immediately move into the lane behind Green indicates that Green too could have safely slowed down in his own lane. The district court thus did not clearly err in finding that nothing prevented Green from slowing down sooner and maintaining a reasonable and prudent distance behind the pickup.

Cox next argues that even if the stop was proper, it was improperly prolonged once Trooper Short indicated that he did not intend to issue a ticket. Although "[a] seizure justified only by a police-observed traffic violation, . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation," Rodriguez, 575 U.S. at 350–51 (cleaned up), the officer may still conduct certain routine tasks related to the traffic violation, including "running a computerized check of the vehicle's registration and insurance; running a similar check of the occupants' identification documents and criminal histories;

preparing the traffic citation or warning; and asking the occupants about their destination, route, and purpose." United States v. Murillo-Salgado, 854 F.3d 407, 414–15 (8th Cir. 2017) (cleaned up) (recognizing that Eighth Circuit case law allowing reasonable investigation during a traffic stop was consistent with Rodriguez); see also United States v. Peralez, 526 F.3d 1115, 1118 (8th Cir. 2008) (characterizing calling to check the occupants' identification as a "routine part of any traffic stop").

Trooper Short was clearly conducting routine traffic violation-related tasks here. His questions to the two men related to their destination, route, and purpose and were posed while awaiting dispatch's response to his criminal histories check. See United States v. Barragan, 379 F.3d 524, 528–29 (8th Cir. 2004) ("If the responses . . . and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions. An officer may also question a vehicle's passengers to verify[,] . . . and conflicting stories may provide justification to expand the scope of the stop." (internal quotation marks and citations omitted)). Trooper Short's questions about drugs or weapons came only after his suspicions were raised by the men's demeanors, their nervousness, and their inconsistent answers to his questions. These circumstances justified Trooper Short's decision to expand the scope of the stop beyond the traffic violation. Compare Murillo-Salgado, 854 F.3d at 415–16 (traffic stop was lawful when officer developed reasonable suspicion while "asking permissible questions of [the occupants] regarding the purpose of their trip and their travel route, attempting to corroborate the responses to those questions, placing calls to dispatch, waiting for responses to verify [the occupants'] identification and criminal history, and entering information into the patrol car's computer" and could point to "'specific and articulable facts which, taken together with rational inferences from those facts' amount[ed] to reasonable suspicion that further investigation [was] warranted" (quoting Woods, 829 F.3d at 679)), with Peralez, 526 F.3d at 1120 (traffic stop was unlawfully extended when routine tasks did not raise any red flags and "stop was delayed because of the trooper's drug

interdiction questioning, not because of anything related to the investigation or processing of the traffic violation").

Finally, Cox argues that the district court erred in finding that the search was consensual. It is "well settled that consent to a search may be given not only by the owner of the property to be searched but also by 'a third party who possesse[s] common authority over or other sufficient relationship to the premises . . . sought to be inspected.'" United States v. Eldridge, 984 F.2d 943, 948 (8th Cir. 1993) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974) (alterations in original)). Thus, "[t]he driver of a car has the authority to consent to a search of that vehicle." Id. Cox does not contest the district court's finding that Green voluntarily consented. Relying on Georgia v. Randolph, he instead argues that, as the renter, he also had a Fourth Amendment-protected privacy interest in the vehicle which was not waived by Green's consent. 547 U.S. 103, 122–23 (2006) (holding that as to a residence, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant"). We need not decide whether Randolph applies to the vehicle here, however, as Cox concedes that he did not object to the search when Trooper Short informed him of it.

The driver may consent to a search of the vehicle "even when some other person who also has control over the car is present, if the other person remains silent when the driver consents and does not object to the search." Eldridge, 984 F.2d at 948 (citing United States v. Morales, 861 F.2d 396, 399 (3d Cir. 1988)); see also Morales, 861 F.2d at 398–400 (driver's consent to search the vehicle was valid as to the passenger even though the initial request was made outside the passenger's presence because the passenger did not object or otherwise attempt to limit the search as it occurred). Cox's attempt to factually distinguish Eldridge is unpersuasive. That Green's consent was obtained outside Cox's presence is not a material distinction. It is undisputed that Green, the driver, consented to the search and that Cox, the passenger, did not object when informed of the impending search but stood by quietly

-6-

while Trooper Short conducted the search.  See Morales, 861 F.2d at 398, 401 (finding driver consent valid on analogous facts).  Green's consent thus validated Trooper Short's search also as to Cox.  See Eldridge, 984 F.2d at 948.

The judgment is affirmed.

_____