# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2781
_____

United States of America,

*Plaintiff - Appellee*,

v.

Drake L. Banks, Sr.,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: May 12, 2022
Filed: August 9, 2022
_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Drake Banks was convicted of a firearms offense after police seized evidence during a traffic stop. The district court[*] sentenced Banks to a term of forty-eight

_____

[*]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

months' imprisonment. Banks appeals the conviction and sentence on several grounds. We discern no reversible error, and therefore affirm.

I.

On September 19, 2019, Lincoln police officer John Hudec was monitoring eastbound traffic on Interstate 80 when a silver Nissan Altima caught his attention. Hudec accelerated to follow the vehicle. He observed the Altima following another vehicle at what he believed to be an unsafe distance. Using a stopwatch, he twice clocked the Altima as traveling less than a second behind the vehicle in front of it. He then watched the Altima move from the left lane to the right lane, leaving only about forty feet between the car and a semi-truck behind.

Officer Hudec initiated a traffic stop. Hudec asked the driver, Zachary Macomber, to accompany him to his patrol car. After talking with Macomber, Hudec returned to the Altima to check the vehicle identification number and to speak with the passenger, Drake Banks. Banks and Macomber each explained that they had set out from the St. Louis area to visit Denver and were now on their way home. But they gave inconsistent accounts concerning whom they intended to visit, whether they spent any time in Denver before turning back, and whether they obtained the Altima, a rental car, in Colorado or Missouri.

Hudec eventually detained Macomber, and seated him in the back seat of the patrol car. Hudec then asked Banks, who was still sitting in the Altima's passenger seat, whether he had any contraband in the vehicle. Banks admitted he had some "smoke," and pulled out a plastic baggie of marijuana from the glove compartment. Hudec detained Banks, and seated him with Macomber in the patrol car.

Hudec then searched the Altima. He found marijuana crumbs throughout the cabin. He also discovered a used blunt near the center console and 1.5 grams of

methamphetamine stowed inside a pill bottle in a compartment in the driver-side door. Hudec seized this drug evidence and five cellular phones.

Hudec also searched the vehicle's trunk. He found two Glock pistols stored in a black Nike bag, three larger "military style" pistols in a duffel bag, and two more Glock pistols that were fully loaded and wrapped in a blue towel toward the back of the trunk. One of the loaded guns, a Glock .45, bore DNA with a profile that was 1.43 trillion times more likely to match Banks than an unknown individual. The officer also uncovered several magazines and "a large amount" of ammunition.

As Hudec started his search of the rental car, his patrol car's interior camera recorded a distressed Banks saying "no, no, no," and questioning why Macomber stopped for the officer. The camera also captured attempts by Banks and Macomber to escape the patrol car. At one point, the pair succeeded in unlocking the partition separating the back seat from the front cabin, and Macomber was able briefly to push open the front passenger-side door before retreating to the back seat.

A grand jury charged Banks with unlawful possession of a firearm by an unlawful user of a controlled substance. *See* 18 U.S.C. § 922(g)(3). Banks moved to suppress the evidence discovered during the traffic stop. He also moved *in limine* to exclude photographs and videos that showed him in possession of firearms or drugs, as well as any evidence regarding his attempts to escape Officer Hudec's patrol car. The district court denied the motions, and the evidence was received at trial.

After the trial, a jury found Banks guilty. At sentencing, the district court applied a two-level increase under USSG § 2K2.1(b)(1)(A) for an offense that involves three to seven firearms. The court calculated an advisory guideline range of forty-one to fifty-one months' imprisonment and ultimately sentenced Banks to forty-eight months.

## II.

Banks first challenges the district court's denial of his motion to suppress. He asserts that the traffic stop was not justified at its inception, and that all evidence discovered during the stop should be suppressed as fruit of an unlawful seizure. The government responds that Officer Hudec observed the driver of the Altima commit two traffic violations: (1) following too closely, *see* Neb. Rev. Stat. § 60-6,140(1), and (2) shifting lanes without first ascertaining whether the shift could be safely made, *see id.* § 60-6,139(1).

An officer's observance of a traffic violation, no matter how minor, gives the officer probable cause to initiate a stop. *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021). Hudec testified that he twice timed the Altima as traveling less than a second behind the vehicle in front of it—once at 0.9 seconds and once at 0.8 seconds. Nebraska law prohibits "follow[ing] another vehicle more closely than is reasonable and prudent." Neb. Rev. Stat. § 60-6,140(1). This statute contains no numerical criteria for assessing whether a driver's following distance is reasonable, but we have stated "that when one car trails another by less than two seconds, an officer will generally have probable cause to believe that the trailing car is closer than what is reasonable and prudent." *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006). After observing the Altima traveling less than a second behind another vehicle, Hudec reasonably concluded that the driver's following distance was not reasonable and prudent. He thus had probable cause for a traffic stop, and the district court properly denied the motion to suppress.

## III.

Banks also argues that the district court erred when it denied his motions *in limine* to exclude certain evidence at trial. We review a district court's evidentiary

rulings, including its decision to deny a motion *in limine*, for abuse of discretion. *United States v. Petroske,* 928 F.3d 767, 771 (8th Cir. 2019).

Banks first disputes the admission of four government exhibits. Exhibits 22C and 22D are videos showing Banks and Macomber handling handguns inside the Altima. Exhibits 25A1 and 25A2 are images of a green, leafy substance consistent with the appearance of marijuana. These exhibits were extracted from a pair of cellular phones that Banks was holding during the traffic stop. Banks contends that the exhibits depicted events that occurred before the traffic stop and are not relevant to the charged offense.

Evidence is relevant if it has "any tendency" to make a fact of consequence "more or less probable." Fed. R. Evid. 401. The videos of Banks and Macomber handling firearms made it more probable that Banks knowingly possessed firearms at the time of the traffic stop. These videos were created fifteen days before the stop, and were filmed inside the same vehicle in which Banks was traveling. In each video, Macomber refers to a "Glock .45." In the first video, Banks responds with "big Glocks, big Glocks" and reaches for something out of sight. In the second, Banks is seen brandishing a Glock handgun. Four of the firearms found in the Altima's trunk were Glocks, including one Glock .45. Video evidence of Banks and Macomber handling firearms of the same description in the same rental car fifteen days before the traffic stop made it more probable that Banks had knowledge of the firearms in the trunk on the date of the stop.

The photographs of suspected marijuana also were relevant. The pictures were taken on July 19, 2019, and September 1, 2019, within two months and three weeks, respectively, of the traffic stop on September 19. The drug-user-in-possession firearms offense under § 922(g)(3) contains no strict temporal requirement. *United States v. Mack*, 343 F.3d 929, 935 (8th Cir. 2003). The government was required to prove only that Banks used a controlled substance "during the period of time he

possessed the firearms," not that he "was actually smoking marijuana at the time that the officers discovered him in possession." *Id.* at 933. The photographs made it more probable that Banks was engaged in a pattern of ongoing marijuana use at the time he was alleged to have possessed the firearms. The district court thus did not abuse its discretion by admitting the evidence. *See United States v. Johnson*, 572 F.3d 449, 454 (8th Cir. 2009).

Banks next asserts that the same four exhibits were "overly prejudicial." A court may exclude evidence if its probative value is "substantially outweighed" by the danger of "unfair prejudice." Fed. R. Evid. 403. These exhibits showcased Banks in possession of a firearm and permitted an inference that Banks engaged in drug use. They were prejudicial in the sense that they tended to prove the elements of the offense, but Banks articulates no reason why any prejudice from this evidence was unfair. We thus conclude that there was no abuse of discretion.

Banks argues briefly that these exhibits should not have been admitted because they "lacked in foundation." But "'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). As best we can tell, Banks suggests that the government failed to show that the exhibits were authentic, because the prosecution did not produce a witness who was present when the exhibits were created.

To authenticate the challenged exhibits, the government needed only to "produce evidence sufficient to support a finding" that the exhibits were what the government claimed they were. Fed. R. Evid. 901(a). To that end, the prosecution presented testimony from both Officer Hudec and Investigator Curtis Reha. Hudec identified the two cellular phones that he observed Banks holding during the traffic stop. Reha explained the process of extracting data from those phones and converting the data into the form of a report. The extraction reports listed the dates when files

were created and other metadata associated with the media files stored on the phones. Hudec testified that he reviewed the reports and identified pertinent photographs and videos, including Exhibits 22C, 22D, 25A1, and 25A2. Each exhibit had a creation date within two months before the stop. While the officers were not present when the images and videos were first captured, their testimony provided a rational basis to believe that the exhibits had been created within the relevant time frame and stored on Banks's cellular phones. That was sufficient "to clear the low bar for authenticating evidence." *United States v. Turner*, 934 F.3d 794, 798 (8th Cir. 2019).

Banks further asserts that the district court should have excluded as unduly prejudicial the evidence of his attempted escape from the patrol car. It is well established, however, that evidence of flight is admissible to show consciousness of guilt. *United States v. Davis*, 867 F.3d 1021, 1030 (8th Cir. 2017). The district court did not abuse its discretion in concluding that a jury reasonably could infer that Banks sought to flee the patrol car because he recognized that officers were on the brink of discovering his unlawful possession of firearms in the trunk of the rental car. Banks's efforts to escape coincided with Hudec's search of the Altima's trunk and with Banks's anxious statements about that search. The evidence was properly admitted.

IV.

Banks next argues that there was insufficient evidence to sustain his conviction. Under § 922(g)(3), the government was required to prove that Banks was a user of a controlled substance "during the time" that he possessed a firearm. *United States v. Carnes*, 22 F.4th 743, 749 (8th Cir. 2022). We view the evidence in a light most favorable to the verdict, and "must affirm unless no reasonable juror could find the defendant guilty beyond a reasonable doubt." *United States v. Urbina-Rodriguez*, 986 F.3d 1095, 1097 (8th Cir. 2021).

There was substantial evidence that Banks used controlled substances. During the traffic stop, Banks told Officer Hudec that he had some "smoke" and retrieved a baggie of marijuana from the Altima's glove compartment. Once detained, Banks admitted he "had a little bit of marijuana." Hudec observed marijuana crumbs throughout the car, and discovered a used blunt and methamphetamine elsewhere in the cabin. The government also presented the images of apparent marijuana on Banks's cellular phone, and a video that showed him smoking a blunt in the rental car two days before the stop. A jury reasonably could have found that Banks was a user of a controlled substance.

There was also sufficient evidence that Banks possessed a firearm. Firearm possession "may be actual or constructive, sole or joint." *United States v. Vega*, 720 F.3d 1002, 1003 (8th Cir. 2013). A reasonable jury could have found that Banks had actually possessed at least one firearm that likely bore his DNA, and maintained joint constructive possession of all seven firearms found in the Altima's trunk. Banks had shared dominion over the vehicle for at least the duration of his trip with Macomber. As Hudec initiated his search of the trunk, Banks made anxious statements from which a jury could have inferred that Banks knew what was in the trunk. The jury also heard testimony about DNA evidence connecting Banks to the Glock .45 handgun found in the trunk, and watched footage of Banks wielding a Glock inside the rental car fifteen days before the traffic stop. Banks objects that much of this evidence is "merely circumstantial," but circumstantial evidence can support a conviction, and the combination of direct and circumstantial evidence here was sufficient to support a finding that Banks was guilty beyond a reasonable doubt.

V.

Finally, Banks asserts that the district court erred at sentencing when it applied a two-level increase under the guidelines for an offense that involved three to seven firearms. *See* USSG § 2K2.1(b)(1)(A). The court concluded that Banks had "at least

a joint constructive possession" of the seven guns found in the Altima's trunk.  We review this factual finding for clear error.  *United States v. Brooks-Davis*, 984 F.3d 695, 700 (8th Cir. 2021).  Banks emphasizes that the "strongest evidence" of firearm possession—the DNA testing—definitively ties him to only a single firearm.  But a person has constructive possession of a firearm if he "has dominion over the premises where the firearm is located," or if he has knowledge and control of the firearm itself.  *United States v. Fisher*, 965 F.3d 625, 630 (8th Cir. 2020) (internal quotation omitted).  All of the guns were together in the trunk, and Banks shared dominion over the vehicle.  Banks's recorded utterances and actions in the patrol car evidenced his knowledge that the officers would find evidence of a crime in the trunk.  The district court's finding that he constructively possessed the guns is not clearly erroneous in light of the record as a whole.

\* \* \*

The judgment of the district court is affirmed.

_____