# IN THE COURT OF APPEALS OF IOWA

No. 23-0120
Filed August 21, 2024

**CHARLES LEONARD CAIN, JR.,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee State.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Charles Cain Jr. appeals the denial of his application for postconviction relief, claiming the district court erred in finding he was not prejudiced by trial counsel's failure to challenge the sufficiency of evidence for a firearm enhancement. We affirm upon our de novo review of the record. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) (noting that while we generally review the "denial of an application for postconviction relief for errors at law," we review applications that raise constitutional issues de novo (citation omitted)).

Cain was a front-seat passenger in a van that led law enforcement on a chase through Ankeny in September 2018. Items were flying out of the van's windows during the chase: papers, money, bags, "a hammer or a hatchet," needles, a methamphetamine pipe, and a gun. Only the pipe and gun came out of the driver's window. Everything else was thrown from the passenger-side window where Cain was sitting. Once the driver stopped the van, officers found methamphetamine and needles scattered throughout the front, along with a leather bag in between the driver and passenger seats that contained small plastic zipper bags and a digital scale. On the floor near the passenger seat, where there was a small plastic zipper bag with .36 grams of methamphetamine, they found two cell phones that belonged to Cain. A large plastic zipper bag with 5.92 grams of methamphetamine was found on the driver side floor. And in the back of the van, there were two large baggies of methamphetamine weighing 59.6 grams.

Cain was convicted of conspiracy to deliver methamphetamine while in possession of a firearm, possession of methamphetamine with intent to deliver while in possession of a firearm, and failure to possess a drug tax stamp. On

Cain's appeal, we reversed his conspiracy and drug-tax-stamp convictions for insufficient evidence. *State v. Cain*, No. 19-0699, 2020 WL 2893250, at *6, *8 (Iowa Ct. App. June 3, 2020). We affirmed the conviction for possession of methamphetamine with intent to deliver, finding "substantial evidence could support a finding that he had constructive joint possession of methamphetamine in the area of the front seats of the van."[1] *Id.* at *7. Although Cain also challenged the sufficiency of the evidence supporting the firearm enhancement on appeal, we found error on that issue was not preserved because it was not raised before the district court.[2] *Id.* at *8; *cf. State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) (holding that Iowa's appellate courts can now "review a defendant's challenge to the sufficiency of the evidence raised on direct appeal without regard to whether the defendant filed a motion for judgment of acquittal").

---

[1] That was not true for the methamphetamine in the back of the van. For that, we found the "State offered no evidence that Cain had knowledge of or control over the baggies of methamphetamine found in the back of the van." *Cain*, 2020 WL 2893250, at *7. This led to the reversal of Cain's conviction for failure to possess a drug tax stamp since the methamphetamine in the front of the van had a net weight of less than seven grams. *Id.* at *8.

[2] Cain emphasizes that in our initial appellate opinion before we granted rehearing, we stated that "there is scant evidence Cain had any type of possession of the firearm" and directed the district court to address the propriety of the enhancement on remand. *See State v. Cain*, No. 19-0699, 2020 WL 2478679, at *7 (Iowa Ct. App. May 13, 2020), *vacated by Cain*, 2020 WL 2893250, at *1. But this ignores our rules of appellate procedure, which provide that if a petition for rehearing is granted, the decision of the court of appeals is vacated. *See* Iowa R. App. P. 6.1204(5)(c). The State petitioned for rehearing because it objected to our commentary on the evidence supporting the firearm enhancement. We granted the State's petition, vacated our initial opinion, and filed the amended opinion discussed above. *See Cain*, 2020 WL 2893250, at *1. So our statement in the vacated opinion, which both parties discuss without objection, is not controlling on the issue raised here.

So, after Cain was resentenced on remand to an indeterminate term of fifty years in prison with a mandatory one-third minimum, *see* Iowa Code §§ 124.401(1)(b), (e), .413(1) (2018), he applied for postconviction relief. The only issue Cain pursued at the hearing on his application was that trial counsel was ineffective "in failing to bring a sufficiency of the evidence claim for the firearms enhancement" under Iowa Code section 124.401(1)(e), which provides: "A person in the immediate possession or control of a firearm while participating in a violation of this subsection shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended." In a deposition admitted as an exhibit at the postconviction-relief hearing, trial counsel acknowledged that he "had no strategic reason for not bringing up sufficiency of the evidence as an argument on the firearms enhancement"—"[i]t was purely neglect."

With that concession, the district court found "the true dispute is whether [counsel's] failure to do so resulted in prejudice to Cain." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel failed to perform their professional duty and (2) prejudice resulted). The court concluded there was no prejudice because the "firearm was thrown from the front of the van, although not by Cain himself. At a minimum, the State presented enough evidence to generate a question for the jury." *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (noting that a claimant's failure to prove either breach or prejudice will preclude relief).

As our supreme court explained in *State v. McDowell*, "[i]f a motion to withdraw the issue of firearm possession or control from the jury would have been successful and thus reduced defendant's sentence, a failure to make that motion was indeed a breach of an essential duty and was prejudicial." 622 N.W.2d 305, 307 (Iowa 2001). But if the evidence was sufficient to submit the issue to the jury, "the failure to challenge that action was not ineffective assistance of counsel." *Id.* "In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the State." *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). "Evidence is substantial if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *Id.*

On appeal, Cain highlights the lack of evidence that he had "immediate possession or control" of the gun thrown out the driver-side window:

> Cain was not the owner or the driver of the van and neither his fingerprints nor his DNA was found on the firearm. Cain made no incriminating remarks or actions and immediately complied with officers' requests to get out of the van. Significantly, there is no evidence to suggest Cain knew about the firearm or its location *before* [the driver] threw it out the window.

The jury, however, was instructed that it could find Cain guilty of the underlying crimes either as a principal or as an aider and abettor: "If you find the State has proved the defendant directly committed the crime, or knowingly 'aided and abetted' other person(s) in the commission of the crime, then the defendant is guilty of the crime charged."[3] *See State v. Baker*, 560 N.W.2d 10, 15 (Iowa 1997)

---

[3] The instruction continued:

"Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by

("There is no distinction between principals who perpetrate a crime and those who aid and abet them. All persons involved in the commission of an offense may be charged, tried, and punished as principals." (citing Iowa Code § 703.1)). In the instruction defining immediate possession or control of the firearm, the jury was accordingly told:

> To have immediate possession of a firearm means to have actual possession of the firearm on or around one's person. To have immediate control of a firearm means to have the firearm in close proximity so that the person can reach for it or claim dominion or control over it. In order to prove that the defendant, *or someone he aided an[d] abetted*, had immediate possession or control of a firearm, the State must prove that the defendant, *or someone he aided and abetted*, had knowledge of its existence and its general location.

(Emphasis added.) Tracking these instructions, the State argued in its rebuttal closing argument that

> [i]f you believe [Cain] aided and abetted in that drug operation whether it was by throwing things out the window, trying to get rid of that evidence, the fact that [the driver] had the gun and he obviously knew about it because he threw it out of the car, that's enough. That's what the law states. He's responsible for the actions of . . . the person he aided and abetted. That's in the instructions. They are treated the same.

The jury then answered yes to the following question in a special interrogatory:

> If you find the defendant guilty in Count II of Possession of a Controlled Substance with Intent to Deliver, to wit: Methamphetamine . . . do you find that a firearm was in such close proximity to the defendant, *or someone he aided and abetted, as to*

---

> knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

*enable him or the person he aided and abetted*, to claim immediate dominion over the firearm?

(Emphasis added.)

Under these unchallenged instructions and interrogatory, a reasonable juror could have found the firearm enhancement applied to Cain because the driver, who he was aiding and abetting in possessing methamphetamine with the intent to deliver, had immediate possession or control of a firearm. *See, e.g.*, *Baker*, 560 N.W.2d at 15 (holding that "even defendants who do not possess or control a gun may be subject to the" firearm enhancement for forcible felonies in section 902.7 as aiders and abettors to the underlying crime); *accord State v. Sanders*, 280 N.W.2d 375, 377 (Iowa 1979) ("[N]ot only the offender who holds the gun but also his aiders and abettors come within section 902.7.").

And, as we already found in Cain's direct appeal, there was substantial evidence that Cain himself "had constructive joint possession of methamphetamine in the area of the front seats of the van," including the methamphetamine on the driver's side. *Cain*, 2022 WL 2893250, at *7; *accord State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) ("[A]n appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." (citations omitted)). Because the gun was also in the front of the van, it is reasonable to infer that Cain as the front seat passenger knew about the firearm's existence and general location, as required by the jury instruction defining immediate possession or control of a firearm. While mere proximity to the firearm in a jointly occupied vehicle is not sufficient to establish

constructive possession, it is still a relevant consideration. *See State v. Cashen*, 666 N.W.2d 566, 572 (Iowa 2003).

Suspicious activity by a defendant may also permit an inference of constructive possession. *See id.* Although Cain exited the van without a fight once it stopped, he refused to give the officers his name or other identifying information. *See State v. Reed*, 875 N.W.2d 693, 706 (Iowa 2016) (considering "incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings" (citation omitted)). And during the pursuit, Cain was throwing incriminating items like money and needles out of the van, while the driver threw out a methamphetamine pipe and the firearm. *See id.* Given that Cain and the driver were working in tandem to get rid of contraband in the van, a reasonable juror could infer that they jointly possessed or controlled the firearm. *See id.* at 700 (noting possession may be sole or joint).

A reasonable juror could also infer from the amount of methamphetamine in Cain's constructive joint possession that, as the State argues, "Cain would *want* to be armed, to protect himself and his stash." A detective with a narcotics task force testified, "It's not uncommon for those involved in trafficking narcotics to have firearms. They're, I assume, worried that they're going to be robbed by either a user that they sell to or maybe someone else that's selling." *See United States v. Riccio*, 340 F. App'x 784, 786–87 (3d Cir. 2009) (finding a reasonable jury could infer the defendant constructively possessed a firearm in his half-brother's bedroom because the gun was used to further the brothers' drug trafficking); *United States v. Banks*, 43 F.4th 912, 919 (8th Cir. 2022) (noting a reasonable jury could have found the defendant, who was a passenger in a rental car littered with

drugs, had joint constructive possession of firearms in the car because he had shared dominion over the car with the driver for the duration of their trip and made anxious statements during the search).

While Cain argues there "are equally logical" inferences that he never possessed the firearm, the State need not disprove "every other potential theory to be drawn from circumstantial evidence." *See State v. Brown*, 5 N.W.3d 611, 619 (Iowa 2024) (citation omitted). A jury can make its own inferences from the evidence so long as they are reasonable. *See State v. Ernst*, 954 N.W.2d 50, 59 (Iowa 2021) ("The relevant inquiry is whether a fact finding is a legitimate inference 'that may fairly and reasonably be deduced from the record evidence.'" (citations omitted)).

Taking the evidence in the light most favorable to the State, "including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence," we find substantial evidence in the record from which a reasonable juror could conclude that Cain had immediate possession or control of the firearm. *Crawford*, 972 N.W.2d at 202 (cleaned up). As a result, he cannot establish the prejudice element of his ineffective assistance claim. *See State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019). So we affirm the district court's denial of Cain's application for postconviction relief.

**AFFIRMED.**