# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1240

———————————————

United States of America

*Plaintiff - Appellee*

v.

Cory T. Brown

*Defendant - Appellant*

———————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

———————

Submitted: January 13, 2025
Filed: May 15, 2025
[Unpublished]

———————

Before GRASZ, STRAS, and KOBES, Circuit Judges.

———————

PER CURIAM.

While fleeing from FBI agents, Cory Brown left behind a gun with his DNA on it. Although he claims it was found during an illegal search and that he never possessed it, we affirm his felon-in-possession conviction and 120-month sentence. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2021).

## I.

The FBI received a tip that Brown was headed from Texas to Missouri to avenge the shooting of a family member. Eager to capture him on several outstanding warrants, agents tracked him, along with another man, to an apartment complex in Independence. After spotting the car described in the tip, they collected location-tracking information on the other man's cellphone, which they then used to pinpoint a specific apartment. As they approached it, four men, including Brown, ran out the back door. A search turned up numerous firearms, including one that had Brown's DNA on the trigger.

The district court[1] ruled that the gun and the evidence connecting him to it were admissible at trial. The jury then used both to find him guilty of illegally possessing a firearm, *see* 18 U.S.C. § 922(g)(1), as did the court when denying an acquittal. The circumstances surrounding the crime also played a role in giving him the maximum possible sentence of 120 months in prison. *See id.* § 924(a)(2) (2021).

## II.

Brown's position all along has been that the jury should not have heard about the gun. The problem, at least in his view, was that the agents found him through the warrantless tracking of the other man's cellphone. It may have led the agents to Brown, but we agree with the district court that *he* had no "legitimate expectation of privacy" in someone else's property. *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (citation omitted).

What was missing is "Fourth Amendment standing," *id.*, which prevents Brown from "vicariously assert[ing]" the other man's constitutional rights, *United States v. Randolph*, 628 F.3d 1022, 1026 (8th Cir. 2011) (citation omitted). Key here

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Jill A. Morris, United States Magistrate Judge for the Western District of Missouri.

is that he did not own the cellphone or have any other possessory interest in it that could have created an "objective[ly] reasonable[]" expectation of privacy. *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000). It makes no difference that the evidence eventually led to his conviction, *see Rakas v. Illinois*, 439 U.S. 128, 134 (1978), or that the agents may have known they were potentially violating the other man's rights, *see Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.").

## III.

From there, the evidence was sufficient to prove that Brown possessed the gun. The DNA evidence made it 13 million times more likely that he touched it than someone else. If the jury knew he had contact with it, it could reasonably draw the inference that he "possessed" it too. *United States v. Banks*, 43 F.4th 912, 919 (8th Cir. 2022).

Other "circumstantial evidence" pointed in the same direction. *Id.* The jury heard that Brown was traveling to Kansas City to retaliate for a family member's shooting, which would suggest his need for a gun. Not to mention that he was one of four individuals who ran out the back door of an apartment containing multiple guns. *See United States v. Bradshaw*, 955 F.3d 699, 705 (8th Cir. 2020) (concluding that a jury can "reasonably infer [a defendant's] consciousness of guilt" based on a "decision to flee law enforcement"). Plenty to support the jury's finding that Brown possessed one of them.

## IV.

There was also enough to support Brown's 120-month sentence. Even assuming the district court made an error in calculating the advisory range by relying on inaccuracies in the presentence investigation report, it was harmless. The court left no doubt by saying it "would [have] still come out at the same place based on . . .

18 U.S.C. [§] 3553(a)" even if Brown had "succe[eded] on every one of his objections." *See United States v. Staples*, 410 F.3d 484, 492 (8th Cir. 2005) (explaining that a sentencing "error is harmless if it is clear from the record that the district court would have given the defendant the same sentence regardless of which guidelines range applied"). It then "justifie[d]" the decision by discussing the § 3553(a) factors, including the need for deterrence and protection of the public, the seriousness of Brown's offense, and his extensive criminal history. *United States v. McGrew*, 846 F.3d 277, 282 (8th Cir. 2017). He may have received the maximum sentence possible, but only because the court thought the statutory sentencing factors supported it. *See id.*

V.

We accordingly affirm the judgment of the district court.

_____